RUMPLE *v.* HENRY H. MEYER COMPANY, INC., ET AL.

[No. 41, October Term, 1955.]

352

*Decided December 1, 1955.*

The cause was argued before COLLINS, HENDERSON and HAMMOND, JJ., PRESCOTT, J., Associate Judge of the Sixth Judicial Circuit, and WARNKEN, J., Associate Judge of the Eighth Judicial Circuit, both specially assigned.

*W. Lee Harrison* and *Richard C. Murray,* with whom was *Albert J. Goodman* on the brief, for the appellant.

*Talbot W. Banks,* with whom were *Clark, Smith & Prendergast* on the brief, for the appellees.

WARNKEN, J., by special assignment, delivered the opinion of the Court.

This case involves a claim under the Workmen's Compensation Act, which is Article 101 of the Annotated Code of Maryland, 1951 Edition. The question is whether the accidental personal injury which the appellant (claimant) sustained, arose out of and in the course of his employment. (Section 14 of Art. 101.) The State Industrial Accident Commission said it did and the lower court said it did not. The latter ruling was made after the jury failed to agree and each party had filed

a motion for judgment pursuant to Rule 8, III Trials, Part Three of the General Rules of Practice and Procedure. From the order entering judgment for the employer and the insurer and overruling the decision of the State Industrial Accident Commission and also overruling the claimant's motion for judgment, the latter has appealed.

At the hearing before the Commission only the claimant testified. In the trial below the claimant and a county police officer, who found the claimant after the accident in a field in an unconscious condition, were the only witnesses:

The material facts are as follows:

The Henry H. Meyer Company, Inc., employer, is engaged in the business of selling and servicing construction equipment such as cranes, shovels and loaders. Its shop is located at Arbutus, Baltimore County. Claimant was 38 and unmarried at the time of the accident, September 14, 1953, and lived at Odenton, Anne Arundel County. He had been working for the employer since April, 1950. He described his duties as service and maintenance man. He would help to unload new equipment delivered to a customer and stay with it a couple of days to service it, i. e., to see that the customer got the right performance out of the machine and that it was given the proper lubrication and adjustment. Where it was possible claimant made repairs and adjustments in the field or at the customer's location. When not so engaged he worked in the employer's shop at Arbutus. The out-of-shop jobs caused claimant to travel to Washington and various points in the states of Virginia, Delaware and Pennsylvania. Such trips were made by automobile in which claimant kept his tools that were worth about $1500.

Claimant was on call 24 hours a day. He worked any time that a customer called and there was work to be done, including nights and Sundays, and he received telephone calls at his home. In the beginning of his

employment he used his own pickup truck for transportation to jobs away from the shop. The employer paid claimant a mileage allowance for such trips which just about covered the upkeep of the truck but not running repairs or new tires. He also used his truck between the shop and his home.

Claimant's boss, who was shop superintendent, decided to discontinue the mileage arrangement and proposed that the employer would provide claimant with a truck and pay all expenses including gasoline, oil, tires and everything, and that claimant could drive it to and from work and drive it just the same as if it were his own truck. The proposal was accepted by claimant and pursuant thereto several trucks had been furnished by the employer, the last, a 1953 Ford, about two or three months before the accident, which was driven less than 1000 miles. Claimant said one of the purposes of being given the truck was to use it to go back and forth to work between his home and the shop. Claimant travelled to the job sites either directly from his home or from the shop and the customer was charged according to which was closer. On such trips directly from home his time began when he left home and ended when he returned home. Otherwise his time began when he reached the shop and ended when he left the shop. On the Saturday before the accident claimant was instructed to make a service trip on Monday to Frederick, where he was to arrive at 8:00 A.M. This would necessitate his leaving home between 6:00 and 6:30 A.M.

On Sunday claimant worked in the shop until noon. He punched his time card at that time and his pay ceased and would not have been resumed until he left his home the following morning to go to Frederick. Upon leaving the shop claimant, with two others who had worked in the shop that morning, went in the 1953 Ford truck, which had been provided for him by the employer, to Tom's Tavern at 1107 S. Paca Street, Baltimore, arriving there about 12:30 P.M. Each of

them had two beers. The companions separately left to go home, the last about 2:30 or 3:00 P.M. Shortly thereafter claimant drove out to Rudy's, on the Old Annapolis Road, and got his dinner, being there from about 3:00 to 4:30 P.M. He then stopped at the yard of one of his employer's customers to see a timekeeper or superintendent of the customer and got back to Tom's Tavern around 8:00 or 9:00 P.M. Claimant sat around there and talked, drinking only soft drinks, until it closed, after midnight, and then started to drive home. After travelling about ten miles on the route which he daily used between the shop and his home, the right front tire "busted", causing the truck to strike and shear in half a telephone pole on the right side of the road. Claimant was severely injured. A police officer, who was called to the scene of the accident about 1:45 A.M. on Monday, and found claimant unconscious, said he noticed the smell of alcohol on his breath, but could not definitely say he was under the influence. Claimant said he was not intoxicated, and had only had the two beers, previously mentioned, in the afternoon at the tavern, which does not sell hard liquor. Tom's Tavern is not in the direction of claimant's home. He said one of his fellow workers, who went to the tavern with him that Sunday, lives very near the tavern and it was practically a daily routine for them to go to the tavern and talk over jobs.

The motion of each party for judgment was necessarily based on the premise that the facts are undisputed and the question involved is one of law. If the facts are undisputed and there is no dispute as to any material inferences to be drawn from the facts, the question involved becomes one of law and should be decided by the court. *Harrison v. Central Const. Co.,* 135 Md. 170, 180; *Atlantic Refining Co. v. Forrester,* 180 Md. 517, 523; *Dunstan v. Bethlehem Steel Co.,* 187 Md. 571, 577; *Greenwalt v. Brauns Building Specialties Corp.,* 203 Md. 313, 318-319. As we find there is no dispute

with respect to the material facts or the inferences to be drawn therefrom, we will proceed to decide the legal question involved.

The courts have qualified or adopted exceptions to the general rule that injuries sustained by employees while going to or returning from their regular place of work do not arise out of and in the course of their employment, as the hazards they encounter on such trips are ordinarily not incidents to the employer's business. One of the exceptions that is now uniformly recognized and applied is that where the employer furnishes the employee free transportation to and from his work as an incident to the employment, an injury sustained by the employee during such transportation arises out of and in the course of his employment. And the employee is deemed to be on duty during transportation. *Watson v. Grimm*, 200 Md. 461, 467-469. The fact that the employee is not being paid wages at the time of the accident is immaterial. *Cardillo v. Liberty Mutual Ins. Co.*, 330 U. S. 469, 482. In *Heaps v. Cobb*, 185 Md. 372, 383, an employee of the City was killed while riding to the office in his own car in the morning to keep an appointment (which is the same as reporting for work). It was the custom of the City to furnish an automobile to take the employee to the office and to his home. It was held that deceased was "in the actual performance of duty" when he met his death. The quoted provision of the Employees' Retirement System was treated as legally the same as the provision of the Workmen's Compensation Act involved in the case at bar. Where an automobile is furnished by the employer as the means of transportation, and the employee sustains an injury while driving it, either during or after a deviation from the usual or most direct route home, the legal result as to whether the accident arose out of and in the course of his employment will usually depend upon the particular circumstances. Thus a prior adjudication is frequently not too persuasive or helpful, as the decision in each case is dependent upon its own facts.

The employer's principal contention is: "Obviously, even though the appellant's use of the truck was with his employer's consent, the exercise of that license for personal purposes did not place the appellant within the scope of his employment. No obligation or duty of his work required the appellant to be on the highway in the middle of the night when this accident occurred." As the accident happened at the precise spot and in the same way as it could have happened if the claimant had driven directly home upon leaving the shop, the effect of the employer's contention must be that the delay caused by the temporary deviation for personal purposes broke the connecting link between claimant and his employment, not only during the period of deviation, but thereafter and while he was travelling towards his home on the route which he always used. There is no exact method of determining the legal effect of a deviation. It depends upon the circumstances; the nature of the work and the terms of the contract of employment being most important. *Watson v. Grimm, supra,* p. 466.

Thirty years ago in *Fletcher v. Meredith,* 148 Md. 580, 583, this court, in a suit for personal injuries caused by an automobile, clearly stated that it depends upon the circumstances as to whether there has been a resumption of the employer's service:

> "But the opinion of this Court is that the weight of authority, and the better reasoning, are to the effect that the bare fact of return toward the garage after a personal use by the employee [with employer's consent] does not alone constitute resumption of the employer's service; that it may in some circumstances, and in others it may not. It would seem possible that an employer's service could be terminated at a distant point, and the car or truck then delivered over to the use of the employee until ultimately returned to the garage."

In *Greenwald, Inc. v. Powdermaker*, 170 Md. 173, a workmen's compensation case, we held that a meat salesman who, after calling on retailers, deviated to collect some personal house rents and was killed while driving home with the intention, as was his custom, to get lunch and to telephone to customers, was engaged in the course of his employment at the time of his death.

In the instant case the employment contract was changed at the instance of the employer. The claimant had been making the trips to and from home in his own truck and at his own expense. The employer not only furnished a truck for transportation to jobs away from the shop, but specifically included, *without any expense to claimant*, the latter's right (1) to drive to and from work and (2) to drive it just the same as if it were his own truck. There is nothing in this arrangement to even suggest that the claimant was required, upon discontinuing work for the day, to go directly home. Nor does the nature of the work indicate that it is either necessary or desirable. In short, it cannot be found that it was the employer's intention or to his benefit that the claimant should not take the necessary time out on the journey home to engage in personal pleasure or business. On the contrary it would be quite unrealistic, as well as an additional expense to the employer, if the claimant first drove home and then virtually retraced his steps to visit Tom's Tavern. The employer's effort to segregate from the total arrangement concerning use of the truck, the trips between the shop and claimant's home, and characterize such use as permissive rather than as part of the employment contract, has no support in the evidence and comes too late in the particular branch of the subject to be seriously considered. It is now firmly established as a legal principle by the courts that under such an employment arrangement as exists in this case, the claimant is on duty and, therefore, in the course of his employment while travelling directly to or from his work.

Assuming for the purpose of the discussion, but not so deciding, that during the time claimant was visiting the several places above mentioned he was not in the duty of the employer, nevertheless he was, in our opinion, in the course of his employment when the accident happened. At that time claimant was doing just what the employment arrangement provided for—driving home. The reason for the delay in reaching that point is immaterial under the facts of this case. In *Meyer v. Royalton Oil Co.*, 167 Minn. 515, 516 (1926), a deviation case, the court in deciding for the employee a contention similar to the one made in this case, said that "it was concededly his [employee's] duty to take the truck to Royalton *and he had no fixed time for doing so.*" (Italics supplied.) Strained reasons of either fact or law which would deny the claim should be rejected because the Act should be so interpreted and construed as to effectuate its general purpose. Code 1951, Art. 101, sec. 64.

In most of the cases where, as a result of the employment contract, the employee was in the duty of the employer while driving the latter's or his own automobile the legal effect of a deviation from the direct route for the personal pleasure of the employee was not based on the length of time of the deviation. Perhaps a reference to some of the cases most in point will be illustrative.

In *Webb v. North Side Amusement Co.*, 298 Pa. 58 (Supreme Court of Pa., 1929), the deceased was a chauffeur for an amusement company and also a private driver for its general manager. He drove the general manager and others to New York for a business trip, and on Friday when the business was concluded he drove them to Atlantic City for recreational purposes. They remained from Friday until Sunday afternoon when their homeward journey to Pittsburgh began. At the time of the accident, in which the chauffeur was killed, they were on the most used and shortest motor route

between New York and Pittsburgh. It was held that the parties had returned to the service of the amusement company at the time of the accident.

In *White, Adm. v. Frank Z. Sindlinger, Inc.*, 30 N. J. Super. 525 (1954), the employee was furnished a pickup truck for transportation of himself and other employees to and from work. The truck was garaged at the decedent's home. During several hours after quitting work the decedent and one or two others made several stops for the purpose of buying and consuming beer. Some part of the time he was driving one of the employees to the latter's home. While the decedent was on the road leading to his home the car turned over and caused his death. The Court found there was a deviation but that it was not unduly extended. It said that when he started on his way home he was back in the course of his employment and that his death followed as a rational sequence from a risk connected with the employment; that the nature of his duties exposed him to the highway danger.

The case of *Beem v. Lee Mercantile Co.*, 337 Mo. 114 (1935), is quite similar to the case at bar. Beem was a salesman who covered certain rural districts by automobile. He called on some customers, had dinner at his mother-in-law's home at Pleasant Hill, made up his orders and reports and mailed same at about 9:30 P.M. Beem then went to a restaurant and played cards for his own amusement until about 12:30 A.M. at which time he started to drive ostensibly to his home at Harrisonville which was his usual route. He was found dead in his car, which was on the road near Harrisonville, having been shot and robbed. It was held that he had resumed his duties and his death arose out of and in the course of his employment.

The employer in the instant case cites *Duggan v. Toombs-Fay Sash & Door Co.*, 228 Mo. App. 61 (1933), decided by an intermediate appellate court. A close reading of the opinion will disclose that the employee

had not resumed his employment at the time of the accident. The *Duggan* case was also relied on by the employer in *Beem v. Lee Mercantile Co., supra.* In the opinion in the latter case, the highest court of the state succinctly disposed of the *Duggan* case by stating that Duggan and his wife "took a sort of joy ride" and "it was on this joy ride that the accident happened." (337 Mo. 123.)

In *McKinney v. Dorlac, et al.,* 48 N. M. 149, 156 (1944), the employee, being paid for the day, while travelling in his own car to another city stopped on the way at a bar for an hour or more. The court said it "was not so great a deviation from the pursuit of his journey to bar recovery;" that "the deceased was justified in doing that which a reasonable person might do under like circumstances and still be engaged in his master's business."

*Dooley v. Smith Transfer,* 26 N. J. Misc. 129, a decision of the New Jersey Workmen's Compensation Bureau, is cited in behalf of the employer. There was a period of about 9½ hours between the employee's last business act and the injury he suffered on the route home. The Court in *White, Adm. v. Sindlinger, supra,* in referring to the *Dooley* case, mentioned that the deputy director found that the amount of intoxicants consumed by Dooley "had created a situation amounting to wilful misconduct which brought the injury upon himself." (30 N. J. 529.)

The case of *Atlantic Refining Co. v. Forrester,* 180 Md. 517, is heavily relied on by the employer. The claim was denied because at the time of the accident, Forrester, the employee, was on the highway for his own pleasure and benefit. After closing the filling station, where Forrester was working, at 11 P.M. Roberts, the owner, in his truck, drove with Forrester to a tavern. About two hours later they set out for a restaurant, which was found to be closed, and then they started for an all night diner. Before reaching the latter the acci-

dent happened. The truck was not Forrester's and he was not even on his way to the hotel at which he was staying. It could not be found from the employment contract or the nature of his duties that Forrester was in the service of his employer at the time of the accident. The case is quite different from the case at bar.

We find as a matter of law that the accident sustained by the claimant arose out of and in the course of his employment. Therefore, the trial judge erred in granting the employer's motion for judgment. The similar motion of the claimant should have been granted. The judgment of the court below is reversed, and the case remanded for the entry of a judgment for the appellant, affirming the order of the Commission.

*Judgment reversed and case remanded, with costs to appellant.*