BOARD OF TRUSTEES OF THE EMPLOYEES' RETIREMENT SYSTEM OF THE CITY OF BALTIMORE *v.* GRANDINETTI

[No. 10, September Term, 1973.]

*Decided October 10, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Neil J. Lewis* and *Milton Ely, Assistant City Solicitors,* with whom were *George L. Russell, Jr., City Solicitor,* and *Simon Schonfield, Assistant City Solicitor,* on the brief, for appellant.

*Edwin J. Wolf,* with whom were *Henry Miller* and *Eccleston, Seidler & Miller* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

Angelo Grandinetti, Superintendent of Inspection of the Highway Division of the Department of Public Works of Baltimore City, who had been a City employee since 1950, sought retirement with accidental disability benefits on 28 June 1972. After a hearing, the Board of Trustees of the Employment Retirement System of the City of Baltimore (the Board) granted ordinary disability benefits, but denied accidental disability benefits. Grandinetti filed a petition for a writ of mandamus in the Baltimore City Court, seeking a review of the action of the Board. From an order of that court, granting the writ, which had the effect of reversing the decision of the Board, and establishing Grandinetti's entitlement to accidental disability benefits, the Board has appealed.

In his petition for the writ, Grandinetti alleged that he had suffered two severe heart attacks: the first in October, 1969; the second, in August, 1970. Both, according to Grandinetti, were accidental in character: the first was a result of a physical assault by a fellow employee; the second, by threats of physical harm, stemming from testimony which he had given before a grand jury in Baltimore.

The controlling statute is found in Baltimore City Code (1966) Art. 22, § 6 (e):

"(e) *Accidental disability benefit.* Upon ap-

plication of a member, or of the head of his department, any member who has been totally and permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place, without wilful negligence on his part, shall be retired by the Board of Trustees provided that the medical board shall certify that such member is mentally or physically incapacitated for the further performance of duty, that such incapacity is likely to be permanent, and that such member should be retired."

The Medical Board filed a report in which it concluded that Grandinetti was physically incapacitated; that his incapacity was likely to be permanent; and that he ought to be retired. As we pointed out in *Board of Trustees of the Fire and Police Employees' Retirement System of the City of Baltimore v. James Gould Rollins, Jr.*, 269 Md. 722, 309 A. 2d 758 (1973), relying on *Adams v. Board of Trustees*, 215 Md. 188, 137 A. 2d 151 (1957), this left but one issue for the Board to decide: Was Grandinetti's incapacity caused by an accident sustained in the performance of duty?

Grandinetti testified that in 1968 he was assaulted in a work-related incident by a fellow employee, Angelo Miola, whose blow broke his nose and his dental plate. In August, 1969, Grandinetti said that while he was at work another fellow employee, Marco Palughi, "started poking me on the chest with his finger," and "threatened to take my job away."

From August of 1969 to October of that year, Grandinetti said that his household had received "11 or 12 calls" threatening him or his family, "one of them saying something about me learning how to swim with concrete shoes."

Dr. Frederick Vollmer, the Board's medical consultant, was the only witness other than Grandinetti. Dr. Vollmer described Grandinetti's physical condition:

"Q. Doctor, did you have occasion to examine the claimant in this case? A. Yes.

"Q. On what date? A. On July 25, 1972.

\* \* \*

"A. At that time he gave me a history of having been under some harassment for several months, at least, in the department, and that he got more and more tense and then developed a heart attack in October of 1969.

"He said that his blood pressure went up. He became nervous. He became highstrung and the hospitalization for the heart attack resulted in approximately three or four months of disability. He then had a further episode in August of 1970, when he was in the hospital for a week at that time, because of dizziness, headaches and palpitation. \* \* \*.

\* \* \*

"He is at present compensated for the degree of activity that he maintained and with the aid of the medications on which he is presently established. But this man is — does have a significant degree of heart disease, and it is enough to permanently incapacitate him."

On cross-examination, Dr. Vollmer expressed an opinion as regards causation:

"Q. Doctor, just a few questions, please, sir. That acute myocardial infarction of 1969, sir, could that have been brought on by threats or worries or acute tension? A. These things will definitely increase blood pressure and will cause constriction of the coronary artery and will result in myocardial infarction, especially in a susceptible individual.

"Q. Now, I don't know whether you have heard his testimony in whole or in part, but as described by Mr. Grandinetti, is that sufficient to bring on the attack which first occurred in October, 1969, in your opinion, sir? A. I think physical threats such

as he was given would be very likely to cause this type of attack."

A compelling analogy may be found in a workmen's compensation case, *Yellow Cab Co. v. Bisasky*, 11 Md. App. 491, 275 A. 2d 193, *cert. denied*, 262 Md. 745 (1971). There, Bisasky, a taxicab driver, was assaulted by a robber who placed a gun at his head. Some hours later, Bisasky suffered a permanently disabling stroke, which later led to his death. The Workmen's Compensation Commission found the injury to be accidental; the Baltimore City Court affirmed, as did the Court of Special Appeals. The latter court, speaking through Chief Judge Murphy (now the Chief Judge of this Court), said:

> "In workmen's compensation cases, proximate cause means that the result could have been caused by the accident and no other efficient cause intervened between the accident and the injury. *Baughman Co. v. Mellott*, 216 Md. 278 [, 139 A. 2d 852 (1958)]; *Reeves Motor Co. v. Reeves*, 204 Md. 576 [, 105 A. 2d 236 (1954)]. Of course, such possibility must amount to more than a guess, and the relation of the accident to the condition complained of, in point of time and circumstance, must be not merely fanciful. *Moller Motor Car Co. v. Unger*, 166 Md. 198 [, 170 A. 777 (1934)]; *Baber v. Knipp & Sons*, 164 Md. 55 [, 163 A. 862 (1933)] * * *." 11 Md. App. at 504, 275 A. 2d at 201.

The court continued, 11 Md. App. at 507, 275 A. 2d at 203:

> "To be robbed at gunpoint in the dead of night and, gun against head, threatened with death, while no longer a rare experience, is nevertheless an unusual happening in the employment of a cab driver. If the cerebral vascular accident suffered by Bisasky resulted from that frightening experience, as found by the jury, we believe his injury constituted an 'accident' within the coverage of the Act."

It should be remembered, however, that while analogies to workmen's compensation cases are frequently helpful in pension cases, *Heaps v. Cobb*, 185 Md. 372, 383, 45 A. 2d 73, 78 (1945), any analogy must be drawn keeping clearly in mind the difference between the workmen's compensation test, Maryland Code (1957, 1964 Repl. Vol.) Art. 101, § 15, ". . . an accidental personal injury sustained by the employee arising out of and in the course of his employment . . ." and the language in Baltimore City Code (1966) Art. 22, § 6 (e), ". . . any member who has been totally and permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty . . . ." [1]

The "arising out of . . . his employment" test would account for the results reached in workmen's compensation cases like *Scherr v. Miller*, 229 Md. 538, 542-46, 184 A. 2d 916, 919-21 (1962), which held that whether a vending machine collector injured in a tavern brawl sustained an injury arising out of his employment, or after he had turned from his employment, was a jury question; and *Todd v. Easton Furniture Co.*, 147 Md. 352, 359, 128 A. 42, 44-45 (1925), which reached the same conclusion in a case where a night watchman who was making his rounds was killed by a third party.

On the other hand, pension cases turning on the question of accidental injury, *Voss v. City of Baltimore*, 246 Md. 345, 228 A. 2d 295 (1967), which denied accidental benefits to a fireman who sustained a back injury while shoveling snow, and *Vaughan v. Mayor & City Council of Baltimore*, 229 Md. 547, 184 A. 2d 842 (1962), which reached a similar result in the case of a fireman with a history of arteriosclerotic heart disease who suffered a coronary infarction while shoveling snow, may be analogized to workmen's compensation cases dealing with the same problem. *See, e.g., Bethlehem Steel*

---

1. A parallel provision, Baltimore City Code (1966) Art. 22, § 34 (e), which applies to members of the City's Fire and Police Employees' Retirement System, is phrased slightly differently, ". . . any member who has been totally and permanently incapacitated for duty as the result of an injury *arising out of and in the course of the actual performance of duty* . . . ." (Emphasis supplied.)

*Co. v. Golombieski,* 231 Md. 124, 188 A. 2d 923 (1963); *Eastern Shore Pub. Serv. Co. v. Young,* 218 Md. 338, 146 A. 2d 884 (1958); *Stancliff v. H. B. Davis Co.,* 208 Md. 191, 117 A. 2d 577 (1955).

For example, *Stancliff v. H. B. Davis Co., supra,* held that the death of an employee from heart failure was not accidental when his pre-existing cardiac condition was worsened by exposure to fumes. Similarly, *Kelly-Springfield Tire Co. v. Daniels,* 199 Md. 156, 85 A. 2d 795 (1952), found no accidental injury when an employee sustained a back injury while performing a task no different from that which he did every day. *See also Whiting-Turner Contracting Co. v. McLaughlin,* 11 Md. App. 360, 367-68, 274 A. 2d 390, 394-95, *cert. denied,* 262 Md. 748, 750 (1971), holding that paralysis which followed a heated argument over a shortage of concrete on a construction job was not the result of such an unusual or extraordinary event as would make the injury accidental.

From these cases can be distilled a rule that an injury, to be accidental, must result, in the language of *Kelly-Springfield, supra,* 199 Md. at 161, 85 A. 2d at 798, "from some unusual strain or exertion of the employee or some unusual condition in the employment." In other words, under our cases causation of an accidental injury may be found in an unusual strain, exertion or condition not customarily encountered in the employment, but not in the sort of strain, exertion or condition usually encountered, even though the latter may produce an unexpected result, *Bethlehem Steel Co. v. Golombieski, supra,* 231 Md. at 129-31, 188 A. 2d at 925-27. In the workmen's compensation field, this is nowhere better illustrated than *Yellow Cab Co. v. Bisasky, supra,* 11 Md. App. 491, 275 A. 2d 193, where the taxi driver was assaulted by a robber, and *Giant Food, Inc. v. Gooch,* 245 Md. 160, 225 A. 2d 431 (1967), where Gooch was injured while at work by the wilful act of a third person. Both cases found the injury to be accidental.

It seems to us that Dr. Vollmer's unequivocal testimony on the issue of causation was determinative of the case. Nowhere in the record is there even a suggestion that

Grandinetti's heart attacks were not the result of the assault and the harassment. Consequently, the court below was quite correct in setting aside the Board's denial of accidental disability benefits, which lacking any evidentiary support, could be nothing other than arbitrary under the circumstances, *Adams v. Board of Trustees, supra,* 215 Md. at 195-96, 137 A. 2d at 155; *Heaps v. Cobb, supra,* 185 Md. at 386, 45 A. 2d at 79.

*Order affirmed, costs to be paid by appellant.*