308

589 A.2d 976

**BOARD OF TRUSTEES OF the EMPLOYEES' RETIREMENT
SYSTEM OF the CITY OF BALTIMORE**

v.

**Donna B. NOVIK.**

**No. 1072, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

May 13, 1991.

Deborah Young Skupien, Asst. City Sol. (Neal M. Janey, City Sol., on the brief) Baltimore, for appellant.

Terrence B. Byrne (Goldstein & Byrne, on the brief) Baltimore, for appellee.

Argued Before WILNER, C.J., and BLOOM and WENNER, JJ.

WENNER, Judge.

Appellee, Donna B. Novik, was granted accidental disability retirement benefits by a Hearing Examiner of the Employees' Retirement System of the City of Baltimore (the Examiner). The Board of Trustees of the Employees' Retirement System of the City of Baltimore appealed that decision to the Circuit Court for Baltimore City. The circuit court affirmed the decision of the Examiner. Appellant now asks us whether the circuit court erred in determining that the Examiner's decision was not arbitrary, illegal, capricious or discriminatory.

For reasons we will explain, we shall affirm the decision of the circuit court.

## BACKGROUND

Appellee began in 1986 as an administrative secretary with the Division of City Builders of the City of Baltimore. On January 13, 1988, she was injured when she slipped and fell on ice as she walked from her car in the parking lot provided by her employer to the building in which she worked. Appellee immediately reported her injury to her employer. Her supervisor accompanied her to the Occupational Medicine Clinic where x-rays were taken. A fracture

at the sacrococcygeal area was suspected, and appellee was referred to Dr. Louis S. Halikman, an orthopedic surgeon.

Dr. Halikman concluded that appellee had sustained a contusion of the coccyx as a result of her fall. Nevertheless, he was unable to determine with certainty if a fracture of the coccyx had occurred. Despite Dr. Halikman's initial opinion that appellee would be able to return to work in "a week or two," she continued to experience lower back pain. Appellee remained under the care of Dr. Halikman for several months. She underwent physical therapy and numerous diagnostic procedures, including magnetic resonance imaging of her lumbar spine.

Believing that anxiety played an important role in appellee's symptoms, Dr. Halikman prescribed Elavil, an anti-depressant, and Xanax to reduce tension. He referred her to a psychiatrist. She saw two psychiatrists. They both opined that there was a connection between appellee's failure to recover and psychological problems.

Appellee was seen on several occasions by Dr. J. Michael Anderson, a chronic pain specialist at the Industrial Rehabilitation Center of Sinai Hospital. He believed that appellee's continued pain was associated with pelvic floor myalgia syndrome.

Dr. David Kresiberg, an orthopedic surgeon who served as appellant's expert, opined that appellee suffered from chronic back pain of unknown etiology and that she was likely permanently disabled. He noted her coccyx fracture and a significant psychiatric history. Appellee's expert, Dr. Weerasak Lima, reported that she suffered from a "fracture of the coccyx with chronic pain syndrome." Dr. Lima estimated that appellee had a 50% permanent partial impairment of her hip and leg and a 50% impairment of her back, for a 50% impairment of the whole person.

At the time of the hearing, appellee was employed in private industry as a part-time typist with a company which had "no problem with ... [her physical] limitations." She testified that she continued to experience limited mobility;

dull, aching discomfort in her lower back; and a great deal of discomfort in her left thigh and knee.

The Examiner found appellee suffered an injury which precluded her from further performance of the duties of her job and that her physical incapacity was the result of an injury arising out of and in the course of actual performance of those duties. Consequently, he granted appellee's request for accidental disability retirement, and the circuit court affirmed it.

This appeal followed.

## STANDARD OF REVIEW

The standard of review applicable to decisions of administrative agencies is quite limited. *Citizens for Rewastico Creek v. Commissioners of Hebron,* 67 Md.App. 466, 470, 508 A.2d 493, *cert. denied,* 307 Md. 260, 513 A.2d 314 (1986). The reviewing court must examine the agency's fact-finding. It must not substitute its fact-finding for that of the agency. *Insurance Comm'r v. Nat'l Bureau,* 248 Md. 292, 309, 236 A.2d 282 (1967). As the agency is considered an expert, its decisions presumably are correct. *Citizens,* 67 Md.App. at 470, 508 A.2d 493.

Ordinarily, in reviewing an administrative decision, a court shall determine (1) the legality of the decision and (2) whether there was substantial evidence from the record to support the decision. *Balto. Lutheran High School v. Employment Security Administration,* 302 Md. 649, 662, 490 A.2d 701 (1985). In other words, could a reasoning mind reasonably have reached the factual conclusion reached by the Examiner. *Bulluck v. Pelham Wood Apts.,* 283 Md. 505, 512, 390 A.2d 1119 (1978).

It is within the Examiner's province to resolve conflicting evidence. Where conflicting inferences can be drawn from the same evidence, it is for the Examiner to draw the inferences. *Bulluck,* at 513, 390 A.2d 1119.

## DISCUSSION

Appellant contends that the Examiner erred in two ways when he awarded accidental disability benefits to appellee. First, appellant maintains that the Examiner erred as a matter of law when he found, contrary to the language of the applicable City Code, that appellee suffered an "injury arising out of and in the course of actual performance of duty." Second, appellant contends that the Examiner erred in awarding benefits to appellee because the evidence is insufficient to support appellee's claim that her alleged disability was a direct result of the accidental injury she sustained when she fell on the ice. As we find no merit in either of appellant's contentions, we shall affirm the judgment of the circuit court. We discuss appellant's contentions in turn.

### A.

According to Article 22, Section 9(j) (1987 Supp.) of the Baltimore City Code, a claimant may be awarded accidental disability benefits if the claimant suffers an accident and subsequent impairment which is determined to be the

direct result of bodily injury through such accident independent of all other causes and independent of any preexisting physical or medical conditions, job-related or otherwise, occurring *while in the actual performance of his duty* with the City at a definite time and place, without willful negligence on the part of the Member.... (Emphasis added.)

The Workers' Compensation Act, Md.Ann.Code Art. 101 § 15 (1951, 1985 Repl.Vol.) provides

Every employer subject to the provisions of this article, shall pay or provide as required herein compensation according to the schedules of this article for the disability or death of his employee resulting from an accidental personal injury sustained by the employee *arising out of and in the course of his employment....* (Emphasis added.)

Initially we note that Maryland courts have distinguished the terms, "out of" and "in the course of." "Out of" refers to the cause or origin of an accident. "In the course of," relates to the time, place and circumstances under which an accident occurred. *Wiley Mfg. Co. v. Wilson*, 280 Md. 200, 205, 373 A.2d 613 (1977); *Proctor–Silex v. DeBrick*, 253 Md. 477, 480, 252 A.2d 800 (1969).

Analogies to workers' compensation statutes are frequently helpful in pension cases. Appellant reminds us that the Court of Appeals cautioned that

> any analogy must be drawn keeping clearly in mind the difference between the workmen's compensation test, Maryland Code (1957, 1964 Repl.Vol.) Art. 101 § 15, "... an accidental personal injury sustained by the employee arising out of and in the course of his employment ..." and the language of the Baltimore City Code (1966) Art. 22 § 6(e), "... any member who has been totally and permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty...."

*Board of Trustees v. Grandinetti*, 269 Md. 733, 738, 309 A.2d 764 (1973). In *Grandinetti*, however, the Court focused on the distinction between injuries "arising out of ... employment" resulting in eligibility for workers' compensation as opposed to accidental injuries leading to benefits under the City Code.

Prior to *Grandinetti*, the Court "recognized a striking analogy between the terms 'in the actual performance of duty' and 'out of and in the course of his employment.'" *Police Comm'r v. King*, 219 Md. 127, 134–135, 148 A.2d 562 (1959). The phrase "in the actual performance of duty" has been treated as legally equivalent to the language of the Workers' Compensation Act. *Rumple v. Henry H. Meyer Co., Inc.*, 208 Md. 350, 357, 118 A.2d 486 (1955); *Heaps v. Cobb*, 185 Md. 372, 383, 45 A.2d 73, 78 (1945).

Appellant urges us to define the "actual performance of duties" test strictly and literally, to preclude disability bene-

fits unless the disabling injury occurred while the employee was physically at her work station engaged in typing, filing, or performing some other required task. Under that view, no recovery would be permissible if the injury occurred even during a temporary interruption—going to the restroom, sipping a cup of coffee, chatting momentarily with a co-worker. Such a construction, we think, would be not only unreasonable but extremely difficult to administer. The "actual performance" test must contemplate the reality of the workplace and include conduct that is permissible, commonly engaged in by employees, and reasonably incidental to the performance of the employees' duties. An employee's presence on the employer's property while proceeding to or from his or her work station could fairly be regarded as being within that test.

The record indicates that appellee had parked her car on a lot reserved for City employees and was proceeding from that lot directly to her workplace when the injury occurred. In concluding that appellee was entitled to benefits, the Examiner obviously determined that her proceeding to work in that circumstance was sufficiently incidental to the actual performance of her duties for the City. Although the Examiner expressed his conclusion that the injury arose "out of and in the course of actual performance of duty," as the key focus was on "actual performance," the difference is inconsequential. We cannot say that the Examiner's conclusion was erroneous as a matter of law or was arbitrary or capricious.

### B.

Finally, appellant contends that even if the Examiner judged appellee's claim by the proper standard, the record contained insufficient evidence to support his finding that appellee's disability is the "direct result of bodily injury arising through an accident which occurred while appellee was engaged in the actual performance of duty."

There were before the Examiner conflicting medical evaluations of appellee. Psychiatric reports indicated that appellee had pre-existing functional problems in her life which could prevent her recovery. Appellee's principle orthopedic surgeon, Dr. Halikman, expressed confusion about the cause of her condition. Nevertheless, he said that he believed appellee's complaints of chronic pain. Experts for both parties opined that appellee was permanently disabled because of her injury.

When, as in the case *sub judice,* there are conflicting inferences that can be drawn from the evidence, we must defer to the decision of the Examiner. *Bulluck,* 283 Md. at 513, 390 A.2d 1119. Here, the Examiner concluded that appellee's disability resulted from her accidental fall on the ice. There was no error.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.

BLOOM, Judge, dissenting:

In *Board of Trustees v. Grandinetti,* 269 Md. 733, 738, 309 A.2d 764 (1973), the Court of Appeals pointed out that although "analogies to workmen's compensation cases are frequently helpful in pension cases" (citing *Heaps v. Cobb,* 185 Md. 372, 383, 45 A.2d 73 (1945)), in drawing such analogies it is important to keep in mind that there is a difference between the language of Md.Code, art. 101, § 15, "... an accidental injury ... arising out of and in the course of his employment," and that of the pension statute, "... an accident occurring while in the actual performance of duty." Ignoring that admonition, the majority has treated the two provisions as if there is no difference at all between them.

As a general rule, an employee is not in the course of his employment while going to or coming from work, since "the hazards they encounter on such trips are ordinarily not incidents to the employer's business." *Rumple v. Henry H. Meyer Co., Inc.,* 208 Md. 350, 357, 118 A.2d 486 (1955).

An employee who is accidentally injured on the employer's parking lot, a short time before he is due to engage in his regular duties of employment, however, is deemed to have been in the course of his employment. *Saylor v. Black & Decker Mfg. Co.*, 258 Md. 605, 267 A.2d 81 (1970); *Proctor–Silex v. DeBrick*, 253 Md. 477, 252 A.2d 800 (1969); *Giant Food, Inc. v. Gooch*, 245 Md. 160, 225 A.2d 431 (1967). That principle was first announced in Maryland in *Rice v. Revere Copper & Brass, Inc.*, 186 Md. 561, 48 A.2d 166 (1946), in which the Court, quoting from *Cudahy Packing Co. of Nebraska v. Parramore*, 263 U.S. 418, 426, 44 S.Ct. 153, 155, 68 L.Ed. 366 (1923), noted, "The employment contemplated his entry upon and departure from the premises as much as it contemplated his working there, and must include a reasonable interval of time for that purpose." Indeed, the going and coming rule has been relaxed to the point that an employee who is injured on his way to work, not yet on the employer's property but in close proximity to it, may, under certain circumstances, be deemed to have sustained the injury "while in the course of his employment." *See Wiley Mfg. Co. v. Wilson*, 280 Md. 200, 373 A.2d 613 (1977).

The parking lot cases and the "close proximity" cases are not based upon any theory that the employee was on the job when he sustained his injury. They are based upon public policy considerations enlarging the protection of the Worker's Compensation Act to cover employees before they actually start to work and after they have completed their duties. "In the course of ... employment" has been extended somewhat beyond the work place and the actual performance of the employment duties.

Appellee, who sustained an accidental injury on her employer's parking lot while on her way to begin the duties of her employment, was clearly injured "in the course of [her] employment" within the meaning of the Worker's Compensation Law. But in order for her disabling injury to qualify her for accidental disability retirement benefits under the Baltimore City Pension Law, it had to be the result of an

"accident occurring while in the actual performance of duty." It was not. Appellee had not yet begun to perform her employment duties. There is simply no basis for construing "actual performance of duty" to include any period of time before work was to begin.

The majority relies on *Police Comm'r v. King*, 219 Md. 127, 148 A.2d 562 (1959); *Rumple v. Henry H. Meyer Co., Inc., supra;* and *Heaps v. Cobb*, 185 Md. 372, 45 A.2d 73 (1945), to support the proposition that "actual performance of duty" should be given the same meaning as "in the course of ... employment." I do not believe those cases support that proposition. Indeed, although *Police Comm'r v. King* recognized that there is a striking analogy between the two terms, it actually held that a police officer who accidentally fatally shot himself while getting dressed to go to the police station was not "in the actual performance of his duty" despite the argument that a policeman is on duty 24 hours a day.

*Rumple* was a worker's compensation case in which an employee, whose employer furnished him with a motor vehicle to get to and from work, had temporarily deviated from his route after leaving work to go home but was back on the route toward his home when his vehicle crashed into a telephone pole. The Court in *Rumple* repeated the analogy between the Worker's Compensation Act and the Baltimore City Pension Law that it had previously drawn in *Heaps v. Cobb*.

*Heaps v. Cobb* was a case in which the Chief Engineer of Baltimore City, who had been furnished an automobile to be used for transportation between his home and his office as well as for official city business, decided to use his private car one morning because his wife and aunt were accompanying him on his trip to City Hall. The car struck a lamppost and then a tree, as a result of which the Chief Engineer sustained fatal injuries. His wife claimed accidental death benefits under the City's pension law, which required that the member be in the actual performance of duty when the accident resulting in death occurred. Draw-

ing the analogy between the Workmen's Compensation Act and the City pension law, the Court held that the Chief Engineer's widow was entitled to the accidental death benefits. The Court, after noting that the decedent had been driving his own automobile as a substitute for the one furnished him by the City, said:

> While the adjudicated cases in which this principle has been applied are mostly those under workmen's compensation statutes, dealing with accidental injuries "arising out of, and in the course of, employment," the analogy between them and the pension cases like the one at bar is so close on the point at issue that we find no legal distinction in applying the principle. The test in both classes of cases is whether the transportation was furnished by the employer as an incident of the employment, and the nature of the mission on which the employee was engaged. *Harrison v. Central Construction Co.,* 135 Md. 170, 108 A. 874; *Reisinger–Siehler Co. v. Perry,* 165 Md. 191, 167 A. 51; *Greenwald, Inc. v. Powdermaker,* 170 Md. 173, 183 A. 601; *Beasman v. Butler,* 133 Md. 382, 105 A. 409. See, also, *Annotation to Nesbitt v. Twin City Forge & Foundry Co.,* 145 Minn. 286, 177 N.W. 131, 10 A.L.R. 169 [165]; *Konopka, et al. v. Jackson County Road Commission,* 270 Mich. 174, 258 N.W. 429, 97 A.L.R. 552; *Phifer's Dependents v. Foremost Dairy,* 200 N.C. 65, 156 S.E. 147, 148, quoting with approval *Harrison v. Central Construction Co., supra.*

As indicated in the Harrison case, *supra,* as a general rule, an employee on the way to work is not in the course of employment and is not in the actual performance of duty. However, where the employer furnishes transportation the rule is different, and the employee is actually on duty when he begins to use this transportation, whether it be in a vehicle supplied by the employer or one of his own substituted for the same mission. *Konopka v. Jackson County Road Commission, supra; Phifer's Dependents v. Foremost Dairy, supra; Pepoon v. Rachels,* 4 N.J.Misc. 40; *Rachels v. Pepoon,* 5 N.J.Misc. 122, 135 A.

684; *Donovan's Case,* 217 Mass. 76, 104 N.E. 431, Ann. Cas. 1915C, 778; *Littler v. Fuller Co.,* 223 N.Y. 369, 119 N.E. 554; *Scalia v. American Sumatra Tobacco Co.,* 93 Conn. 82, 105 A. 346.

185 Md. at 383–84, 45 A.2d 73.

*Heaps v. Cobb,* therefore, did not extend the pension benefits for death as a result of accidental injuries sustained in the actual performance of duty to anything that occurred outside the performance of duty. Because the employer furnished transportation to the employee and the employee was using a vehicle as a substitute for the one furnished by the employer, on the same mission for which the employer had furnished a vehicle, the employee was "on duty," therefore "in the performance of duty" at the time of the accident.

It is perfectly logical and reasonable to apply, by analogy, the same "furnished transportation" rule to both worker's compensation cases and pension cases. An employee using transportation furnished by the employer or a substitute therefor is actually *on the job, on duty, in the performance of duty* the moment he begins to use the transportation. But it is neither logical nor reasonable to say that an employee is actually performing his duties when he arrives at the employer's parking lot just because the Worker's Compensation Law has been judicially extended beyond the work place and the actual performance of employment duties.