BERGNER, Respondent, v. INDUSTRIAL COMMISSION and others, Appellants.

*January 3—January 30, 1968.*

580

For the appellant Industrial Commission the cause was argued by *James P. Altman,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the appellants Bergner & Larsen T. V. & Radio, Inc., and General Casualty Company there was a brief by *Welsh, Trowbridge, Bills, Planert & Gould* of Green Bay, and oral argument by *Lloyd J. Planert.*

For the respondent there was a brief by *Galloway, Olson, Boltz & Steinbrinck* and *Richard A. Boltz,* all of Green Bay, and oral argument by *Richard A. Boltz.*

ROBERT W. HANSEN, J.   The sole question in this case is: At the time of the fatal injury, was the deceased

performing services growing out of and incidental to his employment?

Answering that question begins with the statutory provision under which the application for death benefits was brought. Sec. 102.03 (1), Stats., provides:

"Liability under this chapter shall exist against an employer only where the following conditions concur:

". . . .

"(c) 1. Where, at the time of the injury, the employee is performing service growing out of and incidental to his employment. . . .

"(f) Every employee whose employment requires him to travel shall be deemed to be performing service growing out of and incidental to his employment at all times while on a trip, except when engaged in a deviation for a private or personal purpose. Acts reasonably necessary for living or incidental thereto shall not be regarded as such a deviation. Any accident or disease arising out of a hazard of such service shall be deemed to arise out of his employment."

The Industrial Commission ruling that the deceased was not performing services growing out of and incidental to his employment at the time of the accident which took his life rests heavily on the following findings:

"That the most direct and quickest route from Green Bay, Wisconsin, to Marquette, Michigan, is via Highway 141 to Iron Mountain, Highway 95 to Highway 41, and then east on Highway 41 to Marquette, Michigan; that from Green Bay, Wisconsin to Marquette, Michigan, via Highway 32 to Laona, Highway 8 to Armstrong Creek, North on Highway 101 to Florence, East on Highway 141 to Iron Mountain, Highway 95 to Highway 41, and then East on Highway 41 to Marquette, Michigan, is approximately 37 miles farther and would take longer;

"That it could not be established how the deceased traveled from Green Bay, Wisconsin to Marquette, Michigan when he delivered a stereo set to a customer of the respondent; that in returning, the deceased took Highway 41 West to Highway 95, Highway 95 to Iron Mountain and then Highway 141 West to Florence . . . that

the accident occurred on Highway 101 about three-fourths of a mile north of Armstrong Creek."

The rationale of the Industrial Commission decision is clear. As between any two cities, there may be alternative routes that are used by motorists. If the traveler is an employee on a business trip, he must select the "most direct and quickest route." If he travels on an alternative route, unless the variation is justified by a concurrent business purpose, he will be found not to be performing service growing out of and incidental to his employment while on the trip.

The fishbone that sticks in the throat on this approach is that it makes the Industrial Commission a super-A.A.A. prescribing not a recommended but a required single route of travel between two cities. There is left to the employee no area of choice. As between alternative routes, he must determine which route is the most direct and quickest. No other factors may influence his determination or affect his judgment. He must put aside matters such as a preference for an alternative route based on familiarity with the highway, likelihood of less traffic on the alternative route, a desire to avoid fast-moving traffic, etc. The sole measuring stick is to be quickness and directness. What is chilling is the fact that this trip book giving the only available route which may be traveled is not to be given to him in advance of the trip. It will be spelled out, should he have an accident, at a hearing determining whether he was acting within the scope of his employment after the accident has occurred.

We hold this interpretation to go beyond the provisions and requirements of sec. 102.03 (1), Stats. If the stereo set had been purchased by a customer living in Milwaukee, Lee Bergner, setting out to deliver the set, would have at least three major alternative routes available to him. One, Highway 41 south, would take him past the cities of the Fox River Valley. It is a modern,

four-lane, divided highway, marked by heavy and fast-moving traffic. Many motorists would consider it the quickest route between Green Bay and Milwaukee. The second alternative route, Highway 57 south, would take him east of Lake Winnebago through a number of moderate sized communities to his destination. This is for the most part a two-lane highway with no median strip. It appears to be the shortest and most direct route from Green Bay to Milwaukee. The third alternative route, Highway 141 south, is the lakeshore route following the Lake Michigan western shore, skirting the lakeshore port cities. It is not the quickest or most direct route from Green Bay to Milwaukee, but it is favored and used by many motorists in driving from the home of the Packers to the former home of the Braves.

All three are reasonable alternative routes connecting Green Bay and Milwaukee. Any one of the three routes may be selected for any one of many reasons without the choice being fairly labelled as unreasonable. If an employee is required by his employment to make the trip from Green Bay to Milwaukee, and if he is not given specific instructions as to which highway he is to take, he can elect to go to Milwaukee on any one of the three routes without being found to have driven outside the performing of services growing out of and incidental to this employment.

As between available alternative routes of travel between cities, the measuring stick must be the rule of reason. An employee, required to travel between cities and given no specific instructions as to which route he must travel, may choose any reasonable route among the available alternatives. If the route selected by him meets the test of reasonableness, it meets the requirements of the statute, sec. 102.03 (1).

What if the employee, making a business trip for his employer from Green Bay to Milwaukee, selected Route 41 south because he felt that there were better places

to stop for lunch or dinner on this route? What if the employee selected Route 57 south because it gave him the opportunity to visit en route a mother or grandmother living in Chilton or Plymouth? What if the employee chose Highway 141 south because it appealed to him as the most scenic or was the route with which he had the greatest familiarity? What if he had no reason at all for preferring one route to the others? The test, as we see it, is: Was he traveling on the business trip from the point of origin to the point of destination on a reasonable route that a reasonable person might reasonably choose to travel? If so, he is covered by the Workmen's Compensation Act.

In fairness to the Industrial Commission examiner's approach to applying the law of the state to the facts of the case before the court, it should be conceded that he may have been led astray, not by the decision but by dicta in the case of *Tyrrell v. Industrial Comm.* (1965), 27 Wis. 2d 219, 133 N. W. 2d 810. The case itself needs no distinguishing.

Tyrrell was a traveling salesman who, on the evening of his death, had made his last business call in Crystal Falls, Michigan. He was scheduled to be in Ewen, Michigan, the next day and in Bessemer, Michigan the day after. He drove to Iron River, Michigan. Instead of staying in Iron River or driving north to Ewen and towards Bessemer, he drove south to Nelma, an unincorporated village near the Wisconsin-Michigan line. This was a right-angle deviation from the route connecting his point of departure and point of destination. The material portions of the examiners' findings of fact, as set forth in this court's decision, are as follows:

". . . that instead of stopping in Iron River where lodging and food were available, the deceased, for personal reasons, deviated from the normal route and drive to Nelma, Wisconsin, where he stopped at a tavern for drinks; that there were no accommodations for food or

lodging at Nelma; . . . that the deceased had deviated for a personal purpose and had not returned to the normal route to be used in his work; . . ."

There was no business purpose for Tyrrell to be in Nelma. There was no evidence to show any purpose of his employer being served by his being in or about Nelma, nor any evidence to show a trip with concurrent purposes, as in *James v. Industrial Comm.* (1962), 18 Wis. 2d 239, 118 N. W. 2d 185.

The finding of the commission, as confirmed by the trial court and affirmed by this court was that Tyrrell had deviated from his business trip for a personal purpose and had not returned to his normal route. It is clear that Tyrrell made an outright side trip for personal reasons. At the time of the fatal accident, he was returning to the point at which he had deviated from his business route. At the place of the fatal accident, he was not traveling on a route that could be found to be a reasonable route to take in traveling from Crystal Falls, Michigan, to Ewen and Bessemer, Michigan.

In the *Tyrrell Case,* the court found that the employee, at the time and place of the fatal accident, was engaged in the furtherance of his own purposes and outside the scope of his employment. The court concluded, "Under any view of the evidence Tyrrell had not reached the route which had any bearing on his course of employment."

However, in the *Tyrrell Case,* there are references that go beyond the requirements of the case to refer to "the most reasonably direct route" and the "more direct and better road for travel."

The court stated (p. 226) :

". . . if there is a deviation the employee must return to his course of employment—the most reasonably direct route for traveling salesmen—at the time of the injury in order that recovery may be had." *Employers*

*Mut. Liability Ins. Co. v. Industrial Comm.* (1939), 230 Wis. 670, 284 N. W. 548.

In the *Employers Mutual Liability Ins. Co. Case,* the evidence supported an inference that the employee had stopped off somewhere on his business trip from Madison to Middleton. The court did not deny recovery on this ground stating (p. 680) :

". . . the accident happened while he was proceeding along the Madison-Middleton highway toward his home; —the most direct route from Madison to Middleton. Even though he may have stepped aside temporarily from the scope of his employment, he was at the time of his injury clearly back within it. See *Schmiedeke v. Four Wheel Drive Auto Co.* 192 Wis. 574, 213 N. W. 292; *Racine County v. Industrial Comm.* 210 Wis. 315, 246 N. W. 303; *Continental Baking Co. v. Industrial Comm.* 222 Wis. 432, 267 N. W. 540."

The *Employers Mutual* is authority for the proposition that, once a deviating employee is back on the most direct route, he is clearly back within the scope of his employment. It does not deal with and therefore does not negative the possibility that there may be two or more reasonably direct routes between two cities available for use on a business trip by a traveling employee.

In the *Schmiedeke v. Four Wheel Drive Auto Co. Case,* the court held that an employee was not to be denied recovery because he had engaged in personal affairs during a business trip, as the commission examiner found that Lee Bergner had done during his trip from Marquette to Green Bay. The court stated :

"The trip for the week was an entity. It included going and coming. Even though at times during the week he departed from the scope of his employment, upon his return trip to Clintonville for the purpose of reporting to the office pursuant to his instructions he was again within the scope of his employment."

The *Schmiedeke* decision makes no mention of the "most direct and quickest route" being the only, route that an employee may use.

In *Racine County v. Industrial Comm.*, the employee was returning home from a town to which she had traveled in the course of her employment. She was killed in a single car accident at a place six miles from the most direct route to her home. The court did not deny recovery on this ground, stating (p. 318) :

". . . the deviation from the most direct route entailing only six miles additional travel, did not constitute any substantial or material variation, especially as she may have considered it a better or safer route for night travel, or may have gotten onto the road where found by mistake at a point where it branched off the direct route at a somewhat acute angle."

The *Racine County Case* has materiality here primarily in that the court recognized factors other than mileage and speed in explaining and justifying a choice of a route other than the "most direct and quickest."

In *Continental Baking Co. v. Industrial Comm.*, the court did not deny recovery to an employee who was returning home from a business meeting but who had stopped at a restaurant for a birthday party, holding (p. 439) :

" 'The real purpose of his trip was to attend the meeting which was being held by the grocers in South Milwaukee and the fact that he delayed his departure for Milwaukee by a short visit at the restaurant in no way increased the hazard, this in view of the fact that he used the same route returning to Milwaukee as he would have used had he gone directly from the meeting to his home.' "

While the *Continental Baking Co. Case* gives weight to the fact that the same route was used going and coming, it does not deal with the question of whether there was only one way of traveling from Milwaukee to South Milwaukee on a business trip.

The *Tyrrell Case* and the cases cited above are not to be read as requiring that an employee, to be within the scope of his employment, must travel by the "most direct and quickest route," rather than by a reasonably direct route among the alternative routes available.

In the case before the court, the commission rejected the possibility of return from Marquette to Green Bay by an acceptable alternative route. The commission examiner considered any leaving of the "most direct and quickest route" as a detour or deviation. He found that the portion of the return trip spent in Florence and vicinity to be personal and not for a concurrent business purpose. The trial court overturned this finding of the examiner holding as a conclusion of law that the portion of the trip spent in Florence and vicinity ". . . must be considered a trip for a concurrent business purpose." There is evidence in the record to support both conclusions. However, if the case rested on this confrontation of differing evaluations, the findings of the commission examiner would be sustained. This court will affirm a finding of fact of the commission unless such finding of fact is clearly against all credible evidence or is so inherently unreasonable so as not to be entitled to any weight. *Van Valin v. Industrial Comm.* (1962), 15 Wis. 2d 362, 367, 368, 112 N. W. 2d 920. *See also Fitz v. Industrial Comm.* (1960), 10 Wis. 2d 202, 205, 206, 102 N. W. 2d 93.

However, to constitute a deviation for a private or personal purpose, there must be a leaving of an acceptable alternative route. The fact of deviation cannot be founded on a failing to follow the "most direct and quickest" route. In a case (*James v. Industrial Comm.* (1962), 18 Wis. 2d 239, 242, 243, 118 N. W. 2d 185) involving the question of concurrent business and personal purposes served by the same trip, this court, granting recovery, stated:

"If Wise had a concurrent business purpose as well as a personal purpose during that portion of the trip when he was fatally injured, that part of the trip cannot constitute a deviation. . . . service to the employer need be only a concurrent cause of the trip and need not be the sole, the primary, or the dominant cause."

In the case now before us, the trial court found, ". . . The dominant purpose of the deceased's trip from Green Bay to Marquette, Michigan, and return to Green Bay was solely one of business."

Any personal purposes served, such as resting and visiting at the home of a friend or looking at cottages for sale near the home of the friend had been concluded before the time and place of the accident.

It is not disputed that, at the time of the accident, the deceased was returning to his home in Green Bay. He was returning to Green Bay by way of Highway 101 to Armstrong Creek and then Highway 8 to Laona, Wisconsin, and then Highway 32 to Green Bay. The commission examiner omits this finding because under the "most direct and quickest route" requirement it would be immaterial, but the only testimony in the record supports such finding. The friend whom he visited, Edward Vanden Heuvel, testified that the deceased told him that he (Bergner) was going home and that he (Bergner) was going home the way he always did. Testimony establishes that the defendant always used the Highway 32 route home from vacation visits to the Florence area, and that he preferred Highway 32 because of less traffic and slower traffic. He was traveling at the time of the accident on a route familiar to him and customarily used by him. It was his intended route and his usual one. It was not, and the commission examiner so found, the "most direct and quickest route," but it was an available alternative route from Marquette, Michigan to Green Bay, Wisconsin that a reasonable person might reasonably select. The deceased had entire discretion

within the rule of reason in selecting his route. No obligation on him required more than that he make a reasonable selection among the available return routes.

There is, the commission examiner found, no evidence as to how the deceased traveled from Green Bay, Wisconsin to Marquette, Michigan. He may have used Highway 32, Highway 8 and Highway 101 on the trip north. If he did, he was an employee traveling in the course of his employment on a business trip. At the time of the fatal accident, he was using Highway 101, and intending to use Highway 8 and Highway 32 as the route home. Under the facts and circumstances of this case, we find that this was not an unreasonable election between alternative routes available to him and within the area of choice as to routes open to him.

*By the Court.*—Judgment of the circuit court is affirmed, reversing the decision of the Industrial Commission and directing that the record be remanded to the commission to enter an award in favor of the applicant for death benefits.