565 P.2d 348

Marilyn R. CLARK, Individually, and as widow and next friend of Allen B. Clark, Plaintiff-Appellee,

v.

ELECTRONIC CITY, a/k/a Electronics City, and John Capo, Defendants-Appellants.

No. 2758.

Court of Appeals of New Mexico.

May 3, 1977.

Rehearing denied May 13, 1977.

As Amended May 17, 1977.

Certiorari Denied June 8, 1977.

**478**

David W. King, Threet, Threet, Glass, King & Maxwell, Albuquerque, for defendants-appellants John Capo.

William J. Cooksey, Dickson & DuBois, P. A., Albuquerque, for plaintiff-appellee.

## OPINION

SUTIN, Judge.

Defendant appeals a judgment awarding plaintiff workmen's compensation benefits arising out of the death of her husband while he was operating an automobile in the course of his employment. Two claims for reversal are raised. (A) The workmen's compensation statute did not apply to defendant. (B) Plaintiff's decedent, Allen B. Clark, made a major deviation and abandoned his employer's business. We affirm.

### A. *The Workmen's Compensation Act applied to defendant.*

The defendant, John Capo, solely owned and operated three businesses, as sole proprietorships, known as Electronic City of Albuquerque, New Mexico, the Adult Bookstore of Santa Fe, New Mexico, and the Adult Bookstore of Albuquerque, New Mexico. He did not carry workmen's compensation insurance. On March 1, 1974, the date of decedent's death Capo cumulatively employed a total of four or more employees in the above mentioned three sole proprietorships. Section 59–10–2, N.M.S.A.1953 (2d Repl.Vol. 9, pt. 1) defines employers who come within the Act. It reads in pertinent part:

> . . . *[E]very private person . . engaged in carrying on for the purpose of business, trade or gain within this state, and which employs four [4] or more workmen, . . . shall become liable to, and shall pay . . . compensation in the manner and amount, at the times herein required.* [Emphasis added.]

Section 59–10–4(A) reads in pertinent part:

> Every employer of four [4] or more workmen shall be subject to the provisions of the Workmen's Compensation Act [59–10–1 to 59–10–37].

An " 'employer' includes any person . . . engaged in or carrying on for the purpose of business, or trade or gain any of the occupations or pursuits to which the Workmen's Compensation Act is applicable . . . ." Section 59–10–12.8.

A " 'workman' means any person who has entered into the employment of . . . an employer . . . ." Section 59–10–12.9.

The issue is whether we should translate "business, trade or gain" into "*each* business, trade or gain," so that if Electronic City employed less than four employees, it would not be subject to the Workmen's Compensation Act. This issue is a matter of first impression.

 Traditional rules of construction of the Workmen's Compensation Act militate against defendant's position. The fundamental basis for the adoption of the Act was the protection of the workmen, not the employer. The Act is remedial in nature and a liberal view of the language has always been exercised. This philosophy, expressed by Justice Bratton over half a century ago, has remained the cornerstone which unites the Act with an employee who is injured or who has died as a result of an incident of his employment. *Gonzales v. Chino Copper Co.*, 29 N.M. 228, 222 P. 903 (1924). We assist the employer when we believe the language upon which the employee relies is contrary to the clear legislative intent, and contrary to sound reason and policy, *Martin v. White Pine Lumber Co.*, 34 N.M. 483, 284 P. 115 (1930), or where an unreasonable or strained construction is necessary. *McBee v. Hale*, 56 N.M. 53, 239 P.2d 737 (1952).

After *Gonzales*, supra, our courts have devised liberal interpretations of language in the Act so that workmen and their families will be compensated for accidental injuries or death that normally flow from employment. For examples: (1) Although injuries received going to and from work were not compensable, and the subject was a no man's land, two methods of interpreta-

tion and construction of the statute were made to afford the workman compensation. *Cuellar v. American Employers' Ins. Co. of Boston, Mass.*, 36 N.M. 141, 9 P.2d 685 (1932). (2) Although loss of an eye constituted an injury to a specific body member, three methods of interpretation and construction of the statute were made to afford the workman additional compensation for facial disfigurement. *Elkins v. Lallier*, 38 N.M. 316, 32 P.2d 759 (1934).

▉ A citation of numerous additional cases in the past forty years is unnecessary. To add the word "each" to § 59–10–2, supra, is a function of the legislature, not the courts. The broad phrase, *"engaged in carrying on for the purpose of* business, trade or gain", encompasses various businesses engaged in for gain. A workman is any person who has entered into the employment of the employer. Each workman, whether employed in one business or another, is an employee of the employer under § 59–10–12.9. *Harmon v. Rainey*, 306 S.W.2d 469 (Mo.1957). This principle follows even though a statute reads "in the same business." *La Croix v. Frechette*, 50 R.I. 90, 145 A. 314 (1929). See *Foster v. Cooper*, 143 Fla. 493, 197 So. 117 (1940).

Defendant relies on *Threet v. Cox*, 189 Tenn. 477, 226 S.W.2d 86 (1949) and *Buck & Simmons Auto & Electric Sup. Co. v. Kesterson*, 194 Tenn. 115, 250 S.W.2d 39 (1952). *Threet*

> held without discussion of the point that entirely independent businesses are not to be added together—in this instance a sawmill and a small coal mining operation. This is a highly questionable assumption, both as a matter of statutory language and as a matter of giving effect to the purpose of the exemption. . . Subsequently, without discussion, [*Buck & Simmons*] produced a quite different result by adding together the employees in an electrical supply business and a house-transporting business. This makes better sense in relation to the purpose of the numerical-minimum exemption, since it is generally agreed that the purpose is a matter of avoiding administrative in-

convenience to very small employers. Therefore, if an employer is in business on a large enough scale to hire an aggregate of the number of employees specified, he can be expected to undertake the administrative and insurance burdens of compensation coverage whether the employees are all in one business or not. 1A Larson's Workmen's Compensation Law § 52.33, p. 9–102 (1973).

▉ Considering the purpose and the scope of the entire Act, we hold that every private person engaged in several separate businesses in New Mexico is covered by the Workmen's Compensation Act if four or more employees are cumulatively employed at the time of the injury or death of a workman.

B. *Plaintiff's decedent did not make a major deviation and did not abandon his employer's business.*

The trial court found that decedent was a route salesman for defendant and was furnished transportation for the performance of his duties, and was paid for gas, lodging and other travel expenses, to and from Albuquerque. The majority of defendant's customers for the southern route were located in the towns of Bayard, Silver City, and Truth or Consequences. At the time of his death, he was still learning the route on which he was killed in a one-vehicle automobile accident. On at least one prior occasion, he had performed his route in the identical manner he was following at the time he was killed, by going through the towns of Socorro and Deming on the second day of his route.

On March 1, 1974, decedent suffered an accidental injury that proximately resulted in his death. He died approximately 15 miles north of Truth or Consequences. He was returning to Albuquerque and was concurrently serving the interest of his employer. He was carrying materials such as cash receipts, customer order invoices, travel vouchers, and inventory belonging to defendant which he was to have returned to defendant's place of business before his route was completed, along with the van

that belonged to defendant. Decedent had no fixed hours of employment, either while in the performance of his duties or while completing his route. He was killed on the most direct route between Deming and Albuquerque. By returning to Albuquerque, he was accomplishing some necessary item of employment for the defendant, even though he may have been returning early.

Decedent left Deming; New Mexico, sometime after 1:20 p. m., heading to Albuquerque while in ill health. He made no further stops after leaving Deming and was fatally injured in a single-vehicle accident at 6:00 p. m.

All of the above findings were unchallenged. Defendant challenged other findings and the failure of the trial court to make defendant's requested findings. We do not find it necessary to rule upon these claims of error.

Section 59–10–13.3(A) provides:

Claims for workmen's compensation shall be allowed only:

(1) when the workman has sustained an accidental injury arising out of, and in the course of his employment;

(2) when the accident was reasonably incident to his employment; . . . .

The trial court found that decedent suffered an accidental injury arising out of, and in the course of his employment, and that the accident was reasonably incident to the decedent's employment.

Defendant claims that decedent made a major deviation from his route and abandoned his employment at the time of his death.

Decedent had been suffering from several chronic illnesses for several years. He was concerned about his health and went to the Veterans Hospital on Wednesday, February 27, 1974, two days before his death, and was referred to the alcoholic treatment center. He talked with defendant and told him "that he had been to the hospital that morning and was having problems, and that he should turn himself into the hospital." Defendant suggested that perhaps he should not make the trip and decedent said:

"No, John, I want to make this last trip for you, and then I am going to turn myself into the hospital."

On Thursday morning, February 28, 1974, decedent, on the southern route, made calls on customers in Truth or Consequences, Bayard, and Silver City, arriving in Lordsburg that night. He stayed all night in Lordsburg, made business calls there on Friday morning, March 1, 1974, and drove to Deming that day where he made some calls. From Deming, decedent called his mother about 1:20 p. m. and advised her that he was returning home so he could enter the hospital the following morning. Decedent left Deming sometime after 1:20 p. m. while in ill health. He was injured on the most direct route to Albuquerque and later died.

■ Decedent's return to Albuquerque was not aimed at reaching some specific personal objective alone. There was a "dual purpose"—(1) to enter a hospital, and (2) to accomplish some necessary item of employment as shown by the trial court's findings of fact.

The "dual purpose" rule originated with *Marks' Dependents v. Gray*, 251 N.Y. 90, 167 N.E. 181 (1929). Justice Cardozo established a rule that has swept the country, including New Mexico.

The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. [167 N.E. at 183].

The "dual purpose" doctrine has been adopted in New Mexico. *Brown v. Arapahoe Drilling Company*, 70 N.M. 99, 370 P.2d 816 (1962); *McKinney v. Dorlac*, 48 N.M. 149, 146 P.2d 867 (1944).

■ Defendant's contention seems to be that at the time decedent met his death, he did not follow an assigned route; that if he had, he would have been somewhere between Carrizozo and Corona at the time of the accident. This plea falls on deaf ears. Whether he had his accident at either place, he was within the scope of his employment. An employee who leaves his assigned route

but who remains within the scope of his "dual purpose" doctrine has not abandoned his employment. Justice Moise held thusly in *Frederick v. Younger Van Lines*, 74 N.M. 320, 393 P.2d 438 (1964).

Defendant relies on *Carter v. Burn Construction Company, Inc.*, 85 N.M. 27, 508 P.2d 1324 (Ct.App.1973), as controlling. Here, decedent, on his way home from work, stopped at a lounge where he spent four and one-half hours drinking beer, playing pool and conversing with friends. He received a telephone call, left the lounge and resumed his homeward journey when he was fatally injured. The Court concluded:

> However, if in the course of a business trip an employee makes a major deviation, major because of its duration in time or because of its nature, or both, it can be said that as a matter of law he has abandoned his employment. Then, regardless if he returns to the route of the business trip, this does not in and of itself return him to the scope of employment and an injury occurring after this does not arise out of or in the course of his employment. [85 N.M. at 30, 508 P.2d at 1327].

Such facts are absent in the instant case. There was no deviation nor abandonment of decedent's employment at the time of his death.

Plaintiff is awarded attorney fees of $1,500.00 on this appeal.

Affirmed.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.