643 P.2d 851

**CITY OF SANTA FE and Western Insurance Company, Petitioners,**

v.

**Eloy HERNANDEZ, individually and as Personal Representative of the Estate of Larry P. Hernandez, Deceased, et al., Plaintiffs-Counterdefendants,**

**and**

**Consuelo B. Salazar, Personal Representative of the Estate of Santiago D. Salazar, Deceased, Respondent.**

No. 13854.

Supreme Court of New Mexico.

March 15, 1982.

Felker, McFeeley & Ish, Randolph B. Felker, Santa Fe, for petitioners.

George M. Scarborough, Espanola, for respondent.

OPINION

RIORDAN, Justice.

This workmen's compensation case arises out of a wrongful death action against the personal representative of the estate of Santiago D. Salazar (Salazar), and the City of Santa Fe (City). Salazar's personal representative filed a workmen's compensation action against the City and Western Insurance Company which was severed from other claims for purposes of trial. The trial court granted the City summary judgment. The Court of Appeals reversed the trial court. We granted certiorari and reverse the Court of Appeals and the trial court.

Salazar was employed by the City. Because of the nature of his work duties, he was provided with a City truck which he was allowed to keep at home and drive to and from work for the benefit of the City.

On July 8, 1977, between 5:30 and 6:30 p. m., Salazar "split a six-pack" with other City employees on the work premises. Plaintiff claims that this was not unusual or prohibited. Sometime after 6:30 p. m. Salazar got into his truck and followed two other city employees a short distance to Ramon's Lounge, which was on or near the Cerrillos Road route Salazar could have used to go home from work. When Salazar's companions left him at the lounge at

8:30 p. m., he had allegedly had two more beers. Around 9:00 p. m. a fatal accident occurred while Salazar was driving the City vehicle west on Agua Fria Road, which was another route home from work.

The trial court ruled as a matter of law that Salazar was not within the scope of his employment when he was killed, and therefore, granted the City's motion for summary judgment.

The Court of Appeals, relying on *Carter v. Burn Construction Company, Inc.*, 85 N.M. 27, 508 P.2d 1324 (Ct.App.), *cert. denied*, 85 N.M. 5, 508 P.2d 1302 (1973), reversed the trial court, holding that as a matter of law, if Salazar had abandoned his employment, he had returned to the course and scope of his employment at the time of the accident. The Court of Appeals remanded for the limited purpose of determining whether Salazar's violation of work rules was a proximate cause of the injury, or whether the violation could establish on its face that the employee was outside the course and scope of employment at the time of the injury.

■ We agree that the trial court and the Court of Appeals could, in an appropriate case, rule that a workman abandoned or returned to the course and scope of his employment as a matter of law. Before such a ruling can be made, however, there must be *no disputed questions* of material fact that remain to be determined. *See Edens v. New Mexico Health & Social Services Dept.*, 89 N.M. 60, 547 P.2d 65 (1976); *Ward v. Halliburton Company*, 76 N.M. 463, 415 P.2d 847 (1966). In *Carter v. Burn Construction Company, Inc., supra*, the

Court of Appeals upheld a summary judgment in which the trial court found, as a matter of law, that the workman had abandoned his duties. However, in *Carter* the court stated that "[t]he essential facts are undisputed". *Id.* 85 N.M. at 29, 508 P.2d 1326.

■ In this case, a number of material facts are in dispute such as the amount of beer consumed by Salazar, his degree of intoxication, and whether he followed a direct route home. These are questions of fact which must be resolved by the trial court before it or the Court of Appeals can determine whether Salazar abandoned his employment by deviating substantially from its course and scope, or whether the deceased had re-entered the scope of his employment when the accident occurred. If it is determined that Salazar had not abandoned his employment or that he had re-entered the scope of employment, the trial court must make a factual determination of contested issues in determining whether the deceased's alleged violation of the City's rules and regulations in any way contributed to the injuries suffered.

We reverse the Court of Appeals and trial court and remand the case to the district court for trial.

IT IS SO ORDERED.

EASLEY, C. J., and PAYNE and FEDERICI, JJ., concur.

SOSA, Senior Justice, dissenting, and requesting that the Court of Appeals' opinion be published as his dissent.

EXHIBIT A

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

ELOY HERNANDEZ, Individually, and as Personal Representative of the Estate of Larry P. Hernandez, deceased; PILAR HERNANDEZ, a minor, by her father and next of friend, ELOY HERNANDEZ, ELOISA HERNANDEZ,

a minor, by her father and next
of friend, ELOY HERNANDEZ,

     Plaintiffs-Counterdefendants,

v.                       No. 4736

CONSUELO B. SALAZAR, Personal
Representative of the Estate of
Santiago D. Salazar, Deceased,

     Defendant-Cross-Complainant
     Counterclaimant,

CITY OF SANTA FE, a municipality,

     Defendant-Crossdefendant,

CONSUELO B. SALAZAR, Personal
Representative of the Estate of
Santiago D. Salazar, Deceased,

     Third-Party Plaintiff, Appellant,

v.

CITY OF SANTA FE, a municipality
and the WESTERN INSURANCE COMPANY,

     Third-Party Defendant, Appellees,

BEN A. "GABBY" GABALDON,

     Third-Party Defendant.

APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY

NIEVES, Judge

GEORGE M. SCARBOROUGH
  Espanola, New Mexico

               Attorney for Appellant

RANDOLPH B. FELKER
  Santa Fe, New Mexico

               Attorney for Appellee

## OPINION

SUTIN, Judge.

Originally, this case involved multi-litigation claims. The workmen's compensation action was severed for purposes of trial.

Consuelo B. Salazar, personal representative of the estate of Santiago D. Salazar, deceased, filed a workmen's compensation claim against the City of Santa Fe and Western Insurance Company. Summary judgment was granted the City and Salazar appeals. We reverse.

Santiago, employed by the City, was in charge of the maintenance division of the stock room where parts were kept for motor vehicles. His hours of work were from 8:00 a. m. to 5:00 p. m. The City furnished him a truck which he kept at home. The truck was used to pick up parts in Albuquerque twice a week, early in the morning or evening, and deliver the parts to the shop before 8 a. m. Santiago was also on call generally, any time after he left the premises, if use of his truck was necessary. Under this employment arrangement, Santiago was on duty and in the course of his employment while traveling directly to or from his work, and whenever the use of the truck was necessary. Such use was for the benefit of the employer as well as the employee. Driving home after work was an incident of his employment. It was contrary to regulations to drive the truck in a direction that was not the shortest route home, or to drink and drive or stop at a bar and drink.

There were two direct routes home from the shop. The shop was located adjacent to Siler Road. One route was to drive northwest on Siler Road, a short distance, to Agua Fria Road, then turn west on Agua Fria Road. This was the route Santiago would normally take on his way home. The

other route was to drive southeast on Siler Road to Cerrillos Road, turn right or west on Cerrillos Road. Which route was the shortest, was not determined, but the difference in distance, if any, was negligible.

On July 8, 1977, between 5:30 and 6:30 p.m., in one of the offices on the premises, Santiago, along with three other city employees, including the shop supervisor, "split a six-pack." Santiago drank one can of beer. This was not unusual or prohibited. During the time spent in the shop, Santiago was on duty and would be subject to call if a gas truck came and the gates had to be opened. At 6 p.m. after two cans of beer were consumed, the shop supervisor drove home. Santiago and the other two men remained until after 6:30 p.m. Then, Santiago and the other two men left the premises. Santiago, in his own truck, followed the other employees in a separate vehicle. They drove down Siler Road a short distance to Henry's Hamburger Place on Cerrillos Road, parked their trucks and walked over to Ramon's Lounge. They arrived at ten minutes to seven. Cerrillos Road was one of the routes Santiago could take to go home. Two of the employees left at 8:30 p.m. and went home. During this period of an hour and 40 minutes, Santiago drank two cans of beer. When the two men left, Santiago said he was going home. He was driving west on Agua Fria Road when the fatal accident occurred at 9 p.m. He had returned to the scope of his employment. To arrive at Agua Fria Road from Ramon's Lounge, Santiago had to drive northwest on Siler Road to Agua Fria, then turn west. The accident happened on the route he would normally take on his way home. Santiago was off duty between two and two and one half hours.

The trial court rendered its decision by letter. After stating the facts, the trial court concluded:

> The major deviation by Mr. Salazar, because of its duration in time and because of its nature, requires this Court to find that as a matter of law he had abandoned his employment and that his travel at the time of his death cannot be considered as having re-entered the scope of his employment. Employee Salazar met his death at the place of the accident not within the scope of his employment, and, therefore, the Motion For Summary Judgment is granted.

There was no dispute as to most of the historical facts. Ordinarily, whether the accident arose out of and in the course of the employment is a question of law. *Edens v. New Mexico Health & Social Services Dept.*, 89 N.M. 60, 547 P.2d 65 (1976). The facts of this case are complicated by defendants' claim that Santiago violated city regulations by driving the city vehicle after drinking and was, therefore, using the vehicle without permission.

The trial court determined that Santiago, because of his deviation, had abandoned his employment as a matter of law.

This determination was made in accordance with *Carter v. Burn Construction Company, Inc.*, 85 N.M. 27, 508 P.2d 1324 (Ct.App.1973).

*Carter* established a rule for minor and major deviations. Omitting citations, the court said:

> An employee, *who while on a trip in the course of his employment*, makes *a minor deviation* for personal reasons, is outside the scope of his employment during the deviation. However, once he returns to the route of the business trip he re-enters the scope of his employment and responsibility attaches. *Very minor deviations* are disregarded or considered as part of the employment agreement. However, *if in the course of a business trip* an employee makes a major deviation, major because of its duration in time or because of its nature, or both, it can be said that as a matter of law he has abandoned his employment. Then, regardless if he returns to the route of the business trip, this does not in and of itself return him to the scope of employment and an injury occurring after this does not arise out of or in the course of his employment. [Emphasis added.] [Id. 30, 508 P.2d 1324.]

No distinction is intended between an employee who is "on a trip in the course of

his employment" and an employee who is "in the course of a business trip." The deviation rule is applicable in every case where an employee, while in the course of employment deviates for personal reasons and then returns to the scope of his employment.

*Carter* was distinguished in *Clark v. Electronic City*, 90 N.M. 477, 565 P.2d 348 (Ct. App.1977), but it was followed in *Calloway v. State Workmen's Compensation*, 268 S.E.2d 132 (W.Va.1980). *Calloway* was the first case to address the key words in abandonment: "major" and "deviation." The court said:

> The key is how the terms "major" and "deviation" are defined, and often courts do not address this point. It is apparent that a deviation can be determined only after the nature of the employment and the scope of the business trip are known. This involves an analysis of the employment relationship, the purpose of the trip, the employer's rules or instructions relating to the trip, as well as past practices, in order to determine the reasonableness of the employee's conduct as it relates to the employer's business.
>
> A deviation generally consists of a personal or nonbusiness-related activity. The longer the deviation exists in time or the greater it varies geographically from the normal business route or in purpose from the normal business objectives, the more likely that it will be characterized as major. [Id. 135.]

See, *Anchorage Roofing Co., Inc. v. Gonzales*, 507 P.2d 501 (Alaska 1973).

Deviation cases are legion. Abandonment of employment arises as a matter of law when an employee is on his way home from "a night out." *Alford v. Quality Chevrolet Company*, 246 N.C. 214, 97 S.E.2d 869 (1957). What is "a night out"? In *Carter*, decedent arrived at a lounge at about 5:30 p. m. where he joined two other employees. He spent the next four and one half hours there drinking beer, playing pool and conversing with friends. At about 10:00 p. m. a co-employee offered to drive him home because he thought he was intox-

icated. This was a major deviation. In *Calloway*, he had completed any company business in the mid afternoon when he and a fellow employee began to frequent taverns, drink beer and play pool until 11:00 p. m. This was a major deviation. In *Alford*, five hours were spent in activities like those in *Carter* and *Calloway* which were totally disassociated from both employment and travel home.

Professor Larson states the following general rule:

> An identifiable deviation from a business trip for personal reasons takes the employee out of the course of his employment until he returns to the route of the business trip, unless the deviation is so small as to be disregarded as insubstantial.

1A. Larson, The Law of Workmen's Compensation, § 19.00 at 294.57 (1978).

Some of the cases in which the deviation was held insubstantial are *Rainear v. C. J. Rainear Co., Inc.*, 63 N.J. 276, 307 A.2d 72 (1973); *Curran v. Airport Shuttle Service, Inc.*, 238 A.2d 817 (Del.Super.1968); *Rumple v. Henry H. Meyer Company*, 208 Md. 350, 118 A.2d 486 (1955); *White v. Frank Z. Sindlinger, Inc.*, 30 N.J.Super. 525, 105 A.2d 437 (1954); *Sherrill & La Follette v. Herring*, 78 Ariz. 332, 279 P.2d 907 (1955); *Wyoming State Treas. ex rel. Work. Comp. D. v. Boston*, 445 P.2d 548 (Wyo.1968); *Village of Hilbert v. Dept. of Indus., Lab. & Human Rel.*, 40 Wis.2d 598, 162 N.W.2d 596 (1968); *Bender v. Union Free School District No. 1*, 43 A.D.2d 781, 350 N.Y.S.2d 778 (1973); *Maher v. Hallmark Cards, Inc.*, 207 Pa.Super. 472, 218 A.2d 593 (1966).

The best reasoned case thus far is that of Justice Jacobs in *Rainear, supra*. He pointed out that there is nothing in the compensation law, (nor in judicial opinion,) which fixes an arbitrary limit to the number of hours of deviation in which an employee can terminate and then resume his trip within the scope of his employment. Approaching 10 hours off duty did not constitute a major deviation.

This was not a case in which Santiago had gone off to some distant area intending

to abandon his trip home. Nor did the accident happen during the deviation. He was en route home when he stopped at Ramon's Lounge. It was such a short distance from the shop that he could travel home by way of Cerrillos Road or Agua Fria. Santiago was not given any specific instructions as to which route he must travel in going to and returning from work. He may choose any reasonable route among available alternatives. Failure to follow the "most direct and quickest" route is not a deviation. To constitute a deviation for a private or personal purpose, an employee must leave an acceptable alternative route. *Bergner v. Industrial Commission,* 37 Wis.2d 578, 155 N.W.2d 602 (1968).

Santiago's stay at the lounge was not extended. He was at all times on his way home. Surely Santiago had no intent to abandon his trip. To remain for a period of two hours and drink two cans of beer would not be a rational basis for failing to apply the broad remedial principle that when the diversionary trip is completed and the employee has returned to his original route, he is again covered by the act; and if injured after resuming his authorized travel, he may recover. The deviation then disappears from the general rule, that had Santiago been killed in an accident on the very same road while on his way home directly from work in the truck that the employer had provided for his transportation, there would have been a compensable injury arising out of and in the course of his employment.

It is conceded that if Santiago had stopped on his way home to pick up two cans of beer or a hamburger at a lounge and then proceeded on home, an insubstantial deviation would have occurred. The time spent in the Lounge did not transform the deviation into one that was major.

This case falls outside of *Carter* and similar cases.

We do not want to leave the impression that an accident which occurs during an insubstantial deviation denies an employee workmen's compensation benefits. It does not. *Stanton v. Lloyd Hammond Produce Farms,* 400 Mich. 135, 253 N.W.2d 114 (1977). *Gurovich v. Industrial Commission,* 113 Ariz. 469, 556 P.2d 1131 (1976).

The summary judgment cannot be sustained on the grounds that Santiago had abandoned his employment at the time of the fatal accident.

Two issues of fact remain to be resolved in the court below by way of an evidentiary hearing.

(1) In its letter decision, the trial court stated:

The question of the alleged intoxication of the decedent Salazar is not passed upon by this Court at this time and was not considered in arriving at this decision.

(2) The City claims that Santiago was not authorized to drive a city vehicle, nor to perform duties after stopping for personal reasons and imbibing alcoholic beverages.

The trier of fact must decide whether Santiago's alleged violation of the city's rules and regulations prior to his return to the scope and course of his employment in any way contributed to the injuries suffered.

In *Lukesh v. Ortega,* 95 N.M. 444, 623 P.2d 564 (1980), relied on by defendants, the plaintiff's injury directly and immediately resulted from his performing the act forbidden by his employer. In *Fernandez v. Lloyd McKee Motors, Inc.,* 90 N.M. 433, 564 P.2d 997 (Ct.App.1977), also cited by defendants, the employee was driving in an intoxicated state at the time the accident occurred, and at a time when he had no authority to use the employee's vehicle for personal reasons after he had completed his mission on his employer's business and had returned to his own residence.

It is apparent from *Lukesh* and *Fernandez* that a violation of the employer's rules must be a proximate cause of the injury suffered, or must be such as to establish on its face that the employee was outside the course and scope of employment at the time of the injury.

These issues should be resolved, findings made and conclusions drawn therefrom.

Summary judgment is reversed and remanded to the District Court for hearing to determine the issues of fact as provided in this opinion.

Costs of this appeal to be borne by defendants.

IT IS SO ORDERED.

WALTERS, J., concurs.

WOOD, J., concurring in part and dissenting in part.

WOOD, Judge (concurring in part and dissenting in part).

1. I agree that the summary judgment in favor of the City should be reversed because abandonment of employment could not properly be determined as a matter of law. There were factual issues as to a compensable injury. See *Clark v. Electronic City*, 90 N.M. 477, 565 P.2d 348 (Ct.App. 1977); *Carter v. Burn Construction Company, Inc.*, 85 N.M. 27, 508 P.2d 1324 (Ct.App. 1973).

2. I do not agree that this Court should limit the issues to be tried on remand, thus foreclosing both parties from pursuing their respective contentions at trial. Reversal of summary judgment in favor of defendant does not authorize this Court to resolve issues, which have not been tried, in favor of plaintiff.

I would simply reverse the summary judgment and remand for trial.