692 P.2d 1321

**Consuelo B. SALAZAR, Personal Representative of the Estate of Santiago D. Salazar, Deceased, Third-Party Plaintiff-Appellee,**

v.

**CITY OF SANTA FE, a municipality, and Western Insurance Company, Third-Party Defendants-Appellants.**

No. 7191.

Court of Appeals of New Mexico.

Nov. 10, 1983.

Certiorari Quashed Jan. 2, 1985.

George M. Scarborough, Santa Fe, for third-party plaintiff-appellee.

Randolph B. Felker, Santa Fe, for third-party defendants-appellants.

## OPINION

LOPEZ, Judge.

The defendants, the City of Santa Fe and Western Insurance Company, appeal a judgment awarding death benefits to the

plaintiff under the New Mexico Workmen's Compensation Act. We affirm.

This appeal presents three issues for our determination: (1) Whether the accidental death arose out of and in the course of the decedent's employment with the City of Santa Fe; (2) the issue of intoxication; (3) the issue of seat belts.

The trial court entered the following pertinent findings of fact:

1. Santiago D. Salazar was an employee of Defendant City of Santa Fe at the time of his death on July 8, 1977, and was earning $940.00 per month.

2. At the time of his death he was married and had as dependents, his wife, Consuelo B. Salazar and two minor children. The wife has remained unmarried to date.

3. Salazar's employment with the City of Santa Fe required him to have an assigned City pick-up and keep it at his house at all times when he was not at the city yards located on Siler Road, City of Santa Fe, New Mexico. He was on call at all times to perform services for the employer, day or night receiving no additional pay therefore. The assignment of this vehicle was for the benefit and convenience of his employer, and incident to the employment.

4. He lived southwest of the city limits of Santa Fe in an area known as Acres Estates. There were two routes to get from the city yards to his house; one route was to go northwest on Siler and then turn southwest on Agua Fria Road to Acres Estates, the other route was to go southwest on Siler Road to Cerrillos Road then southwest on Cerrillos Road to Airport Road then west to Acres Estates. There was no more than 300 feet difference in the length of the routes.

5. On July 8, 1977, at approximately 5:00 p.m. Patrick Romero, Juan I. Gonzales, both supervisors, one Joseph Martinez, and Salazar split a six pack of beer at the city yards while discussing city business. Salazar had one beer. This was customary and permitted. The City

Manager and other department heads also occasionally would retire to local bars for alcoholic refreshments before proceeding on their way home driving assigned City vehicles.

6. A severe rain/hail storm struck the southwest area of Santa Fe on July 8, 1977, at approximately 6:30 p.m. and continued until after 9:00 p.m. that night.

7. Between 6:30 p.m. and 7:00 p.m. Salazar locked the security gates at the city yards and in his assigned vehicle, followed Gonzales and Martinez, also in an assigned city vehicle, to Henry's Hamburgers at the east end of Siler Road, the street which was in front of the city yards. Instead of entering Henry's, they went next door to Ramon's Bar.

8. By 8:30 p.m., Salazar, Gonzales, and Martinez had each consumed two beers. Gonzales and Martinez, in an assigned city vehicle left at that time. Salazar remained until almost 9:00 p.m. At 8:30 p.m. when Gonzales left, he stated Salazar did not appear to be drunk and was not bleary eyed.

9. Salazar left Ramon's and started for home in his assigned city pick-up shortly before 9:00 p.m. He drove west on Siler Road then south along Agua Fria Road towards his home. The rain storm was still in progress.

10. Salazar was involved in an auto accident at a point on Agua Fria Road between the city yards and his home. The pick-up Salazar collided with was parked heading south, partly in the southbound lane of traffic and had no operating lights or reflectors at the time. Salazar died as a direct result of injuries sustained in the collision.

11. Salazar's death occurred as a natural and direct result of the accident while he was acting within the scope of his employment. He had returned to the course and scope of his employment and at the time of the accident he was acting incident to his employment.

12. Claims of the City that Salazar was driving while intoxicated or acting contrary to city rules or regulations are

not supported by competent evidence. The analytical toxicologist's testimony expressed doubt as to results of tests because of mishandling and mislabeling of specimens.

13. The actions of Salazar regarding his personal comfort deviation were actions customarily followed by supervisory personnel and higher city officials during months preceeding [sic] his death.

14. The proximate and contributing causes of the accident were: (1) the negligent parking of the other pick-up upon the highway; (2) no lights or reflectors; (3) the heavy rain storm in progress.

15. The evidence was insufficient to determine that Salazar was intoxicated at the time of and immediately preceeding [sic] the collision which resulted directly and proximately in his death.

■ Although this appeal is governed by NMSA 1978, Crim., Child.Ct., Dom.Rel. & W/C App.Rules (Repl.Pamp.1983), which no longer require that specific findings be challenged as was provided in NMSA 1978, Civ.App.R. 9m(2) (Cum.Supp.1982), defendant has challenged Findings 12 and 15, and in its first point argues the incorrectness of Finding 3.

Despite the lack of any provision in the new appellate workmen's compensation rules regarding "challenges" to the findings, we are nevertheless bound, of course, to the rules of appellate review that require the reviewing court to consider only the evidence that supports the trial court's findings, *Schober v. Mountain Bell Tel.*, 96 N.M. 376, 630 P.2d 1231 (Ct.App.1980); to view the evidence most favorable to the workman, *Mirabel v. Robert E. McKee, General Contractor, Inc.*, 77 N.M. 213, 421 P.2d 127 (1966); to avoid weighing the evidence or determining credibility of witnesses, *Perez v. International Minerals & Chemical Corp.*, 95 N.M. 628, 624 P.2d 1025 (Ct.App.1981). We will not substitute our judgment for that of the trial court. *Ideal Basic Industries, Inc. v. Evans*, 91 N.M. 460, 575 P.2d 1345 (1978). With these rules of review in mind, we address defendant's points on appeal.

**ISSUE NO. 1. WHETHER ACCIDENTAL DEATH AROSE OUT OF AND IN THE COURSE OF DECEDENT'S EMPLOYMENT WITH THE CITY OF SANTA FE.**

■ The defendants challenge the decision of the trial court on the basis that the accident which led to the decedent's death was an ordinary risk which would have been experienced by any workman and did not arise out of or in the course of his employment with the City of Santa Fe.

At the outset we disagree with the defendants. Nevertheless, we shall set out the pertinent New Mexico law applicable to this case.

In *Edens v. New Mexico Health & Social Services Dept.*, 89 N.M. 60, 547 P.2d 65 (1976), our Supreme Court summarized the rulings of several "special mission" cases, recognizing that accidental injuries occurring during such special missions are considered to have occurred in the course and scope of the worker's employment. The case before us is not a true "special mission" case; it falls into the case category of an employee's "deviation" from the course and scope of his employment. However, to the extent that Salazar was permitted to drive a city vehicle to and from work, the language in *Edens*, quoting from *Rafferty v. Dairymen's League Co-op Ass'n*, 16 N.J.Misc. 363, 200 A. 493 (Work.Comp.Bur. 1938), is pertinent to this case:

An employe, authorized or required to use an automobile by his employer in the fulfilling of his contract of service, is still within the course of his employment while driving from the point of last call to his home where the car is garaged * * *.

Defendants contend that we are compelled to reverse because of our decision in *Carter v. Burn Constr. Co., Inc.*, 85 N.M. 27, 508 P.2d 1324 (Ct.App.), *cert. denied*, 85 N.M. 5, 508 P.2d 1302 (1973). We do not agree. *Carter* was a case in which we were called upon to review a summary judgment granted to defendants upon the showing that an employee, who was re-

quired to drive a company truck home, left work some time before 5:30 p.m. when he arrived at a bar, and attempted to leave the bar around 10:00 p.m. Fellow employees who had spent the night with him thought he was too intoxicated to drive. About 10:15 p.m., the workman was killed when his truck went out of control, rolled over and burned. Those were the undisputed facts upon which we held summary judgment to be proper. The decedent's "major deviation * * * because of its duration in time or because of its nature, or both," was said to be, as a matter of law, an abandonment of employment. 85 N.M. at 30, 508 P.2d 1302.

When the present case was earlier before this court and thence upon certiorari, Justice Riordan, writing for the Court, agreed that the facts of this case were not amenable to determination, as a matter of law, that Salazar had abandoned his duties. The Court said, 97 N.M. at page 766, 643 P.2d 851:

> In this case, a number of material facts are in dispute such as the amount of beer consumed by Salazar, his degree of intoxication, and whether he followed a direct route home. These are questions of fact which must be resolved by the trial court before it or the Court of Appeals can determine whether Salazar abandoned his employment by deviating substantially from its course and scope, or whether the deceased had re-entered the scope of his employment when the accident occurred.

*City of Santa Fe v. Hernandez,* 97 N.M. 765, 643 P.2d 851, 855 (1982).

In *Carter,* the trial court ruled on undisputed facts that a 5-hour deviation and decedent's undisputed intoxication constituted abandonment of employment as a matter of law. In *McKinney v. Dorlac,* 48 N.M. 149, 146 P.2d 867 (1944), a deviation of "an hour or more" in Encino did not take an employee out of the course and scope of his employment when he was injured after he had returned to his assigned route from Albuquerque to Roswell. The court held that "an injury to an employee arises in the course of his * * * employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental [thereto]." *Id.,* 48 N.M. at 152–53, 146 P.2d 867. The stop at Encino "was not so great a deviation [as] * * * to bar recovery." *Id.,* 48 N.M. at 156, 146 P.2d 867.

At 1 Larson's Workmen's Compensation Law, § 19.29 at 4–314–15 (1982) Professor Larson writes:

> An employee who has the right to have his homeward journey covered cannot, so to speak, put that right in the bank indefinitely * * *. The sheer amount of time elapsed is bound to influence courts in these [deviation] cases.

Our Supreme Court intimated, at least, in its *Hernandez* opinion, that reentry by Salazar to the scope and course of his employment would be a permissible finding by the trial court upon resolution of disputed facts, including the extent of his intoxication and the directness of the route after Salazar left Ramon's Bar.

After a full-blown trial of this case, the trial court specifically found that Salazar's day and night on-call employment, for the benefit and convenience of the City, required him to drive a City-owned truck, and to keep it at home when he was not at his place of employment. It found that Salazar's superiors and other city employees also stopped at bars occasionally before going home in assigned City vehicles; that Salazar left the City yards between 6:30 and 7:00 p.m. and that a severe rain/hail storm hit Santa Fe about the same time, continuing until around 9:00 p.m. Among other findings, the trial court decided that there were alternate routes from Salazar's employment to his home (one of which Salazar had taken when the accident happened), with no more than a 300-foot difference in the length of the routes; that when Salazar left the bar the storm was still in progress, and that "[h]e had returned to the course and scope of his employment and at the time of the accident he was acting incident to his employment." It also

found that defendants' claims of intoxication and conduct of the decedent contrary to city regulations had not been proved. All of these facts were, undoubtedly, facts additional to the elapsed time which influenced the trial court's decision. *Larson, supra.*

We conclude that the trial court's findings answered the factual questions identified by the Supreme Court in *Hernandez* as necessary to determine whether decedent had returned to the course and scope of his employment. Those findings—including the trial court's implicit determination that a 2½-hour deviation is not, as a matter of law, an abandonment of employment—are supported by substantial, although disputed, evidence. We will not disturb the trial court's resolution of conflicting evidence, nor its supported findings regarding the evidence.

■ Defendants raise further, however, in their argument addressed to the court's determination of "course and scope of employment," that the accident was "an ordinary risk" not peculiar to decedent's employment, citing among other cases, *Gutierrez v. Artesia Public Schools,* 92 N.M. 112, 583 P.2d 476 (Ct.App.1978). We have been unable to find any New Mexico workmen's compensation case concerning a highway accident occurring during the course and scope of the workman's employment that has ever added another requirement that the accident be so unusual that it could not have happened to "any employee, shopper, motorist or commuter." (Brief in Chief, page 5.) *See, e.g., Clemmer v. Carpenter,* 98 N.M. 302, 648 P.2d 341 (Ct. App.), *cert. denied,* 98 N.M. 336, 648 P.2d 794 (1982); *Wilson v. Rowan Drilling Co.,* 55 N.M. 81, 227 P.2d 365 (1950); *McKinney.* We might agree that highway accidents are so common that every citizen is exposed to that risk whenever he drives on any highway, but the argument of the worker's non-eligibility on that account is specious. The courts recognize that if as a result of the exposure of a risk *incidental to the requirements of one's employment* the workman is injured, the *uniqueness* of

the risk or the resulting injury is not controlling.

Anyone who is hit by a piece of equipment, or strains his back lifting a heavy object, could as easily suffer a disabling injury if the event happened while he was at home and off work, as if the event occurred during the course and scope of his employment. But if any usual or unusual incident happens while the workman is engaged in the work of his employer, by which the workman suffers a disabling injury reasonably resulting from the work-related accident, it is a compensable injury. *See, e.g., Avila v. Pleasuretime Soda, Inc.,* 90 N.M. 707, 568 P.2d 233 (Ct.App.1977), as an example of New Mexico's compensable work-related auto accident cases.

The United States Supreme Court in *Cudahy Packing Company v. Parramore,* 263 U.S. 418, 424, 44 S.Ct. 153, 154, 68 L.Ed. 366, 369 (1923), said:

> * * * Whether a given accident is so related or incident to the business must depend on its own particular circumstances. No exact formula can be laid down which will automatically solve every case. The fact that the accident happens upon a public road or at a railroad crossing and that the danger is one to which the general public is likewise exposed is not conclusive against the existence of such causal relationship, if the danger be one to which the employee, by reason of and in the connection which his employment, is subjected peculiarly or to an abnormal degree.

We conclude that the record supports the findings of fact made by the trial court and these findings support the conclusions of law regarding course and scope of employment.

## ISSUE NO. 2.  INTOXICATION.

Under this point the defendants challenge Findings 12 and 15 of the trial court:

12. Claims of the City that Salazar was driving while intoxicated or acting contrary to city rules or regulations are not supported by competent evidence. The analytical toxicologist's testimony

expressed doubt as to results of tests because of mishandling and mislabeling of specimens.

\* \* \* \* \* \*

15. The evidence was insufficient to determine that Salazar was intoxicated at the time of and immediately preceeding [sic] the collision which resulted directly and proximately in his death.

Intoxication is a defense to compensability under the Workmen's Compensation Act of New Mexico. NMSA 1978, § 52–1–11 (Orig.Pamp.1978). The City has the burden of proving that the decedent was intoxicated and that the intoxication was the proximate cause of the accident. It was the prerogative of the trial court to resolve the conflicts in the evidence. *Cardenas v. United Nuclear Homestate Part.*, 97 N.M. 46, 636 P.2d 317 (Ct.App. 1981). Expert opinion evidence may be disregarded by the factfinder in whole or in part, even if uncontradicted. *Van Orman v. Nelson*, 78 N.M. 11, 427 P.2d 896 (1967); *Phillips v. Smith*, 87 N.M. 19, 528 P.2d 663 (Ct.App.1974). We have reviewed the evidence in the record and we conclude that there is substantial evidence to support Findings 12 and 15. We hold that the City failed to prove its defense of intoxication.

## ISSUE NO. 3. SEAT BELTS.

The defendants contend that the decedent was not wearing seat belts at the time of the accident, contrary to NMSA 1978, § 52–1–10(A), which provides that when an injury to or death to a workman results from failure to use a safety device provided by his employer, then the compensation otherwise payable under the Workmen's Compensation Act shall be reduced 10 percent.

NMSA 1978, Section 52–1–10(E), requires the employer "to allege the specific safety device which it is claimed an employee failed to use before the employer may claim a reduction of compensation." Rule 12 of the Rules of Civil Procedure for the District Courts states:

(b) How presented. Every defense, in law or fact, to a claim for relief in any pleading \* \* \* shall be asserted in the responsive pleading thereto if one is required. \* \* \* [The exceptions thereafter set out are not involved herein.]

NMSA 1978, Civ.P.R. 12 (Repl.Pamp.1980). In none of defendant's voluminous pleadings, nor in the pre-trial order, is the issue of non-use of seat belts specifically raised as a claim for reduction of compensation.

The trial court's failure to adopt defendant's requested findings on this issue is a finding against them on the issue. *Griego v. Wilson*, 91 N.M. 74, 570 P.2d 612 (Ct. App.1977).

The judgment of the trial court is affirmed. The plaintiff is awarded $2500 for attorney's fees on this appeal.

IT IS SO ORDERED.

WALTERS, C.J., concurs.

HENDLEY, J., dissents.

HENDLEY, Judge (dissenting).

I disagree with the majority view that after a review of the evidence there was sufficient evidence to support Findings of Fact 12 and 15 on the issue of intoxication.

As I read the record, the testimony is couched in terms of possibilities. Anything is possible. Further, expressed doubts of a witness without any foundation certainly should not be equated as substantial evidence.

Accordingly, I dissent as I can find no evidence to support the findings.